## Case No. 4,819.
### FISHER v. HARNDEN.
[1 Paine, 55.] [1]
Circuit Court, D. New York. April Term, 1812.[2]

---

[1] [Reported by Elijah Paine, Jr., Esq.]
[2] [Reversed in 1 Wheat. (14 U. S.) 300.]

T. A. Emmett and P. A. Jay, for plaintiff.
C. D. Colden and E. Williams, for defendant.

. LIVINGSTON, Circuit Justice. This is an action of ejectment for lands situate at Granville, in the county of Washington, and within this district. The defendant having pleaded not guilty, a special verdict was found, which contains the following facts: Donald Fisher, on the 1st of January, 1777, was seised in fee of the premises in question, and was in the actual possession thereof, and continued so until the rendering of the judgment hereinafter mentioned. Donald Fisher lived and died a British subject, and had issue the lessors of the plaintiff, who were his only children and heirs at law, one of whom was born in 1776, another on the 23d of April, 1785, and the other on the 23d December, 1787, and all of them are and always have been subjects of Great Britain. Donald Fisher resided at Hebron, in the county of Washington, from 1793 until his death, which happened on the 1st of September, 1798. On the 17th of April, 1780, the grand jury of the county of Charlotte presented an indictment against Donald Fisher, for adhering to the enemies of this state, on which such proceedings were had that afterwards, to wit, on the third Tuesday of October, in the year 1783, the said Donald Fisher not having appeared and traversed the indictment, a judgment was rendered against him by the supreme court of this state, by which it was considered that he do forfeit all his estate real and personal, within this state, to the people thereof. On the 28th of March, 1797, the state of New-York passed an act "for limiting the period of bringing claims and prosecutions against forfeited estates." [Laws N. Y. 1797, p. 162, c. 52.] This act, after reciting that, "whereas the title deeds and other documents relative to forfeited estates were generally carried away by the former proprietors, whose conduct occasioned their forfeiture, and the title of the state as resulting from such forfeiture, was thereby peculiarly liable to be obscured or defeated;" therefore it was enacted, that "no person or persons; bodies politic or corporate, who then had, or should or might thereafter have any estate, right, title, claim, or demand in or to any lands, messuages, tenements, or hereditaments supposed to have been forfeited to the people of this state in consequence of the attainder or conviction of any person or persons

for any act or crime done or committed during the late war, and which had been theretofore granted or conveyed to any person or persons by the commissioners of forfeitures, or. other person or persons duly authorized for that purpose, on the part of this state, should, after the expiration of five years from and after the passing of that act, and where the estate, right, title, claim, or demand should thereafter accrue, then after the expiration of five years after the same should so accrue, have, prosecute, sue, or maintain any suit at law for the recovery thereof against the right or title so granted by the people of this state as abovesaid." The second section of the act declared, that those who did sue for or make any claim to such lands after the said respective periods of five years, should be utterly barred. And by the 3d section it was provided, "that if any person or persons who should be entitled to sue or prosecute such suit or action, or who had or should have such right or title, should be within the age of 21 years, feme covert or insane; that then such person or persons, his, her, and their heirs and assigns, should or might at any time within five years next after his, her, or their coming to full age, or of sound mind or discoverture, bring, sue, and prosecute such suit or action, and at no time thereafter." The defendant purchased the premises, but it does not appear when, for a valuable consideration, of the commissioners of forfeiture, who were duly authorized for that purpose, as forfeited to and vested in the people of the state of New-York, by and in virtue of the judgment aforesaid. This action was commenced the 5th of December, 1809. The lease, entry, and ouster, as stated in the declaration, are also found by the special verdict. On the argument of this special verdict the defendant resorted to two grounds of defense: 1st, he contended, that while the judgment of the supreme court remained in force and unreversed, the present suit could not be maintained; and, 2dly, if it could, that it was barred by the act of limitation passed the 28th March, 1797 [supra].

In arguing the first point, the counsel for the defendant were not understood as vindicating the judgment against Fisher. It seemed to be admitted by both parties, and such must have been the decision of the court, that it was contrary to the treaty of peace (signed the 3d of Sept., 1783; 6th article, 1 Laws [Bior & D.] 205) between Great Britain and the United States; and the only point in dispute was, whether its being so could be brought into view in this collateral way, or whether its reversal by writ of error were not previously necessary to enable the plaintiff to recover the premises in question; or in other words, whether the judgment were merely erroneous, that is, good and valid, until reversed, or void and a nullity ab initio.

Where a court possesses jurisdiction, it has a right to decide every question which oc-

curs in the cause, and whether its decision be correct or otherwise, its judgment, until reversed, is regarded as binding. But if it act without authority, its judgments are considered as nullities, and form no bar to a recovery which may be sought, even prior to a reversal, in opposition to them. This distinction runs through all the cases on this subject, and is particularly recognised in the one from the third institute. In the present case it cannot be pretended that the supreme court had any authority to pronounce the judgment which is relied on as forfeiting the property claimed in this action. All its powers, as they regarded these proceedings, were derived not from its constitution or common law, but from an act of the legislature of the state of New-York, entitled "An act for the forfeiture and sale of the estates of persons who have adhered to the enemies of this state, and for declaring the sovereignty of the people of this state in respect to all property within the same." · This act, which created the offence, and prescribed proceedings out of the course of the common law, is stated in the judgment itself, as the only source of the jurisdiction. If this act then, were not in force at the time of its rendition, it must have been coram non judice, and absolutely void. Such would have been the case if the law had been previously repealed by the legislature, without any provision as to pending prosecutions. It must be equally so where by a treaty, which is the supreme law of the land, it is provided, that no future confiscation shall be made by reason of the part which any one had taken in the late war. This treaty being as much a matter of record as the law of the state or the present judgment, this court is competent, by its own inspection and attention to dates, to determine whether the authority of the supreme court was not at an end before it undertook to pronounce this judgment. And being of opinion, as has already been perceived, that such was the case, the conclusion is inevitable that the judgment was void from the beginning, and furnishes, although unreversed, no defence to this action.

But if the judgment rendered against the ancestor of the lessors of the plaintiff be no obstacle to a recovery in this action, it is supposed they are barred by the act of limitations, a copy of which appears in the verdict. The lessors of the plaintiffs, on the other hand, contend, that their case is not embraced by the provisions of this act, and that if it be otherwise, two of them at least, on account of their infancy, are within·its saving clause. Whether the sense of the legislature in the present case be collected from the title of the act, its preamble, or its enacting words, the court cannot see how the lessors of the plaintiffs are affected by it. Its title is "An act limiting the period of bringing claims and prosecutions against forfeited estates." Now, as the estate of Donald Fisher never was forfeited, the title does not ap-

ply to an action brought by his heirs to recover the land belonging to their ancestor. The preamble, which, if it were necessary to resort to it, might in a doubtful case furnish a clue to the meaning of the legislature, discovers an intention to provide for cases of a very different nature. It is in the following terms: "Whereas the title deeds and other documents relative to forfeited estates were generally carried away by the former proprietors, whose conduct occasioned their forfeiture, and the title of the state as resulting from such forfeitures is thereby peculiarly liable to be obscured or defeated, therefore, &c." On this preamble it is sufficient to remark, that it applies only to forfeited estates, and that the mischief intended to be guarded against was not the prosecution of actions for a recovery of property by persons whose estates had been forfeited and sold, but by others whose property might have been sold as belonging to the party whose estate had been forfeited. If the action were brought by the attainted party himself, or his heirs or assigns, no title deeds or documents could be necessary to establish the claim of the state. A valid forfeiture, as they would both claim under the same title, would be all that was wanting; and this being matter of record, might be made out, without difficulty, at any period of time ever so remote. But when strangers to the forfeiture were plaintiffs, then it might be difficult for the public, not being in possession of the deeds relating to the estate of the person convicted, to prove, after some lapse of time, that the property sold in fact belonged to the attainted person, and in such case, a limitation might be reasonable and proper. If no construction favourable to the defendant can be drawn from the title, or preamble of the act, as little will its enacting clause avail him.

The court here disclaims all right or inclination to put on acts of limitation, which are among the most beneficial to be found in our books, any other construction than their words naturally import. It is as much its duty to give effect to laws of this description, with which courts however sometimes take great liberties, as to any other which the legislature may be disposed to pass. When the will of the legislature is clearly expressed, it ought to be followed without regard to consequences. And a construction, derived from a consideration of its reason and spirit, should never be resorted to but where the expressions are so ambiguous as to render such mode of interpretation unavoidable. But whatever may be the intention of the legislature, if such intention be not declared by apt words, no court can be blamed for mistaking it, and giving to the words used their ordinary signification, however wide such interpretation may be from the object which may have been in view. It must be admitted, that if it were intended to bar by this act of limitation

suits brought by the parties themselves, whose estates had been forfeited and sold by the commissioners of forfeiture, a very awkward phraseology has been employed. The persons barred by this limitation of five years can be no others than those who had, or might have any estate, right, title, claim, or demand in any lands supposed to have been forfeited in consequence of the attainder or conviction of any person for any act or crime committed during the late war, and which had therefore been granted to any person by the commissioners of forfeitures. Before this act can be brought to bear on any case, there must have been an actual forfeiture by the attainder or conviction of some person, and a sale by the commissioners, of some property supposed to have belonged to such attainted and convicted person, but in fact claimed by some one else. The terms, "supposed to have been forfeited," cannot without violence, when taken in connexion with those which follow, receive any other meaning. They refer to the estate which had been sold where there might be room for supposition and mistake, but not to the fact of attainder or conviction, which must ever be a matter of record and notoriety; and about which, therefore, there could be no doubt or mistake. Thus the lands of A. might easily and innocently be sold by the commissioners under a supposition of their having belonged to, and of their having been forfeited by, the conviction of B. Such cases no doubt must have occurred, and it was no more than right that the parties thus aggrieved should be barred, if, after a reasonable time, they neglected to assert their rights. But in the case before the court there has been no forfeiture by the conviction of any person, which alone would have been a complete defence, but only a sale by the commissioners, and of course the defendant has altogether failed in making out one essential fact to constitute a case for the application of the limitation prescribed by this law.

It has not been pretended that the parties are barred by the general act of limitations, nor do any facts appear on the special verdict, to authorize such conclusion. It was supposed by the plaintiff's counsel, that the defendant might rely on the alienage of his lessors, but although this ground was not taken, yet as the question is presented by the facts which are found, and lest it may be supposed to have been overlooked, the court has no hesitation in saying, that as Donald Fisher held these lands at the time of the treaty of London, in 1794, neither he nor his heirs, devisees, nor assigns can, so far as respects this property, or the legal remedies incident thereto, be regarded as aliens.

Upon the whole, then, as the judgment rendered against Donald Fisher was coram non judice, and therefore void, and as neither the title of the limitation act which has been relied on, nor its preamble, nor its enacting words, apply to a case where there has been no valid attainder or conviction, the court is of opinion, that judgment must be entered for the plaintiff, but that the writ of habere facias possessionem be stayed until the further order of the court.