WHEREATT, Respondent, vs. WORTH and another, imp., Appellants.

*November 16 — December 7, 1900.*

*Limitation of actions: Pleading: Demurrer: Amendment: Discretion:*
*Review on appeal: Stare decisis.*

1. Subd. 7 of sec. 2649, and sec. 2651, Stats. 1898, permit a complaint to be demurred to because the action was not commenced within the time required by law, only upon condition that the particular sec-

Whereatt vs. Worth and another.

tion of the statute of limitations or subdivision of a section relied upon be thereby specifically pointed out.

2. The court has the same discretionary power to permit an amendment to a pleading setting up the statute of limitations as to permit any other defense to be so pleaded.

3. The doctrine that the bar of the statute of limitations extinguishes the right involved and creates a new one in the adverse party which is in the nature of property, within the meaning of that term as understood in respect to constitutional guaranties, is not in harmony with the doctrine that the defense of the statute of limitations is unconscionable and that a trial court may, in the exercise of its discretionary power, on that ground alone, refuse in all cases to permit it, where its availability depends upon judicial favor.

4. The judicial policy that regards statutes of limitations in an unfavorable light and defenses under them unconscionable, is not in accord with the legislative policy. The latter ought to prevail.

5. In a matter properly regarded as purely discretionary with the trial court, its action, reasonably in accord with a supreme judicial rule, will not be disturbed to satisfy the necessities of a particular case, though the rule itself be so discountenanced as to in effect change it.

6. In accordance with the principles stated, the decision of the trial court, refusing to permit a demurrer to be amended so as to cure an excusable and excused mistake in respect to pleading the statute of limitations, is affirmed, while the reason upon which the decision is grounded is discountenanced so far as being a safe guide for future judicial administration.

[Syllabus by MARSHALL, J.]

APPEAL from a judgment of the circuit court for Eau Claire county: JAMES O'NEILL, Circuit Judge. *Affirmed.*

Action to recover on an appeal bond. A good cause of action was stated against *H. C. Ellis, John J. Worth,* and others who were made defendants, and the right to recover thereon was good but for the statute limiting the time for the commencement of the action. The defendants above named separately demurred on the ground that the action was not commenced within the time limited by law, but did not, in the demurrers, refer to the particular statute upon which they relied, other than as the six-years statute of limitations. Plaintiff moved to strike out the demurrers as

frivolous. The motions were submitted March 22, 1898. April 2, 1899, and while the circuit judge yet had under advisement the questions raised by the motions to strike out the demurrers as frivolous, defendants moved the court for leave to amend their demurrers by specifying the particular statute of limitations referred to therein. Defendants' motions were denied and plaintiff's motions granted, leave being granted to each of the defendants to answer the complaint upon paying $10 costs and waiving the defense of the statute of limitations. Defendants declined to answer upon the terms imposed, and thereupon judgment was duly rendered against them according to the prayer of the complaint.

For the appellants there was a brief by *J. F. Ellis*, attorney, and *W. F. Bailey*, of counsel, and oral argument by *Mr. Bailey*.

For the respondent there was a brief by *L. A. Doolittle* and *A. J. Sutherland*, and oral argument by *Mr. Doolittle*.

MARSHALL, J. Appellants' counsel contend, first, that the proper statute of limitations was sufficiently pleaded by the demurrers; second, that the court erred in refusing to permit the demurrers to be amended by referring to the section of the statutes relied upon. Some other points are suggested in counsel's brief, but they are not considered of sufficient importance to warrant discussing them in this opinion.

1. The first contention cannot be sustained. The statutes governing the subject are very plain. Subd. 7, sec. 2649, Stats. 1898, says that a defendant may demur to the complaint upon the ground that " the action was not commenced within the time limited by law." Sec. 2651 says that a demurrer upon the ground that the action was not commenced within the time limited by law may be stricken out on motion unless it contain " a reference to the statute claimed to limit the right to sue." This court, in *Clarke v. Lincoln Co.*

54 Wis. 578, inferentially decided that a reference to the particular section or subdivision of a section applicable to the case, in a demurrer, is required in order to satisfy the calls of the statute; and the point was directly decided by this court in *Crowley v. Hicks*, 98 Wis. 566. The holdings are the same elsewhere under similar statutes. *Manning v. Dallas*, 73 Cal. 420; *Onderdonk v. San Francisco*, 75 Cal. 534; *Stewart v. Budd*, 7 Mont. 573. The law authorizing the defense of the statute of limitations to be interposed by demurrer upon condition that the demurrer point out the statute relied upon, came in by the adoption of the revision of 1878. Since that time, it is believed, no case can be found where the sections referred to were not complied with, the sufficiency of the demurrer was challenged on that ground, and it was held good. Cases where a limitation statute was pleaded by answer are not in point. There is no statute requiring the plea of the statute of limitations by answer, strictly so called, to specify the particular statute relied upon.

2. Did the court err in refusing appellants leave to amend their demurrers? The contention in that regard is not free from difficulty. The situation of appellants is one of peculiar hardship, looking at it as involving a valuable right lost by excusable mistake; and we cannot view it in any other way, as an original proposition. It seems that appellants should have been relieved from their error without hesitation, upon their complying with such terms as would have placed respondent in substantially the same position he was in before the demurrers were interposed, unless it was proper for the circuit court, in the exercise of judicial discretion, to refuse to grant the defendants the benefit of a valuable right which they never intended to surrender — in effect, to compel them to pay a large claim which the law had once extinguished. We apprehend that the learned trial court took that view of the matter when

the motions for leave to amend the demurrers were presented, and that, in the decision, he was governed by the idea often found expressed in the decisions of this court, that the defense of the statute of limitations is unconscionable and not to be favored by the courts; that whenever the right to insist upon it is dependent upon the favor of the court, though that favor be required in order to avoid a purely excusable mistake, the court may properly compel the party to pay the penalty therefor of an entire forfeiture of his right. We cannot readily say that the trial court was not justified in that position and that the judgment can be disturbed, without ignoring the rule of *stare decisis*, which is grounded upon the idea that it is better to abide by a wrong rule firmly established than to seek to avoid or right it at the expense of those who have relied upon it. That doctrine has controlling force where the wrong rule of law has become a rule of property, unless the circumstances indicate an overpowering necessity to change it, which necessity cannot be satisfied by the exigencies of any particular case. When, however, the rule of *stare decisis* is invoked to secure adherence to a wrong doctrine which may be corrected without prejudice to any one other than a party before the court, and others similarly situated as regards pending litigations, where no rule of property is required to be changed, courts are not so firmly bound by a previous ruling but that they may correct it with considerable freedom, if firmly convinced that it stands in need of correction.

The facts of this case seem to call upon the court very strongly for relief and to require a favorable answer to the application therefor, unless the law is so firmly established otherwise that it cannot be so abruptly disturbed as is necessary to accomplish that end, or unless the trial court had such reasonable ground to suppose that the law was so firmly established that it cannot be said that the boundaries of judicial discretion were overstepped in reaching the result complained of.

Whereatt vs. Worth and another.

Appellants, before interposing their demurrers, owed the respondent nothing.   Respondent's cause of action was extinguished by his own laches.   The right of appellants had, by force of the statute, superseded respondent's rights, and was secured to them by constitutional guaranties the same as any property right, as we shall see later.   They never intended to part with that right.   They failed for the moment to properly insist upon it because of misapprehension on the part of their attorneys of the scope of the statute as regards insisting upon it by demurrer.   They were guilty of no fault from which they would not have been promptly relieved, as regards the defense of payment or any legitimate counterclaim or any ordinary defense, effective to defeat the plaintiff's claim.   They acted with sufficient promptness in asking to be relieved from the error of their attorneys, and the ordinary terms imposed for granting leave to amend a pleading would have amply saved the respondent from prejudice by the delay, yet the favor was denied and a claim that in law did not exist when the action was brought to enforce it was thereby resurrected and fully re-established.

Viewing the situation as above indicated, it seems to call so strongly for a remedy as to justify the court in taking a retrospective view of our judicial policy as found in the books, in order to see just where we stand with reference to the defense of the statute of limitations.   Is it, or if it is, should it be considered, an unconscionable defense, so that the court, upon a trifling pretext, can justly deny to a party the right to interpose it when that right depends at all upon judicial pleasure?   It is considered that we are justified in using the term "trifling pretext" as an original proposition, and as applied to the case before us, since, as stated, it is plain that the appellants never intended to waive their statutory right in the first instance and that respondent would not have been prejudiced in any substantial degree if the court had allowed the application for relief from the mistake.

Anciently there was no system of limitation statutes as we understand the term. The first attempt at such a system was made by Stat. 32 Hen. VIII. ch. 2, which was superseded by Stat. 21 Jac. I. ch. 16. From that the limitation statutes in most of the states of the Union, including our own, have been modeled. The books indicate that the innovation upon common-law methods was not at first received favorably by the courts. It was held that it merely deprived the possessor of a right to the use of judicial machinery to enforce it, leaving the right itself otherwise unimpaired, with such a moral obligation upon the part of the person adversely interested to recognize it that it was dishonorable, in a sense, to insist upon the statutory defense thereto. That idea was transplanted to this country as part of the common law. In time, however, the legislative purpose to put forever at rest a claim against which a statute of limitations has completely run, in the absence of distinct acts intended on both sides to revive it, came to be recognized as controlling, and the duty of the courts to give effect thereto to be fully recognized. The effect was to largely or wholly do away with the idea that the defense of the statute of limitations is unconscionable and that courts should so exercise judicial functions as to prevent its operation, and to lead to the contrary idea, that such statutes are highly beneficial, and that defenses under them constitute vested rights protected as such by constitutional guaranties and entitled to such protection the same as other property rights.

The radical change in judicial policy indicated is sufficiently shown by numerous expressions in legal opinions, of which the following are but a few of the many examples that might be given: "The court here disclaims all right or inclination to put on acts of limitation, which are among the most beneficial to be found in our books, any other construction than their words naturally import. It is as much

its duty to give effect to laws of this description, with which courts, however, sometimes take great liberties, as to any other which the legislature may be disposed to pass." LIV-INGSTON, J., in *Fisher v. Harnden*, 1 Paine, 55, 61. " I consider the statute of limitations a highly beneficial statute, and entitled as such to receive, if not a liberal, at least a reasonable construction, in furtherance of its manifest object. It is a statute of repose. . . . The defense which it puts forth is an honorable defense. . . . There is wisdom and policy in it, as it quickens the diligence of creditors and guards innocent persons from being betrayed by their ignorance or their overconfidence in regard to transactions which have become dim by age. Yet I well remember the time when courts of law exercised what I can but deem a most unseemly anxiety to *suppress the defense;* and when, to the reproach of the law, almost every effort of ingenuity was exhausted to catch up loose and inadvertent phrases from the careless lips of the supposed debtor, to construe them into admission of the debt. *Happily, that period has passed away; and judges now confine themselves to the more appropriate duty of construing the statute, rather than devising means to evade its operation.*" STORY, J., in *Spring v. Gray*, 5 Mason, 505, 523. " The statute of limitations is entitled to the same respect with other statutes, and ought not to be explained away." MARSHALL, C. J., in *Clementson v. Williams*, 8 Cranch, 72. " It has often been matter of regret in modern times that in the construction of the statute of limitations the decisions had not proceeded upon principles better adapted to carry into effect the real objects of the statute; that, instead of being viewed in any unfavorable light, *as an unjust and discreditable defense*, it had received such support as would have made it, what it was intended to be, emphatically a statute of repose. . . . English decisions upon this subject have gone to great lengths. . . . There appears at present a disposition on the part of the

English courts to retrace their steps. . . . The American courts have evinced a like disposition." STORY, J., in *Bell v. Morrison*, 1 Pet. 351, 360. To the same effect are *Wood v. Carpenter*, 101 U. S. 135, and *McCluny v. Silliman*, 3 Pet. 270. Statutes of limitation, "especially when relating to land, are entitled to and have generally received from this court a *favorable regard* and a liberal construction, with a view to the attainment of their objects." *Phillips v. Pope's Heirs*, 10 B. Mon. 163. " The statute of limitations is a *well-marked favorite.*" *Cooper v. Cooper*, 61 Miss. 676. To the same effect is *Hart's Appeal*, 32 Conn. 520. 'Amendments to avoid the statute of limitations cannot be allowed.' "We are aware there are some cases the other way, based upon early decisions made when the statute of limitations was looked upon as *a hard and unconscionable defense.* But we can recognize no sound principle upon which such decisions can rest. Statutes of limitations are now quite generally looked upon as statutes of repose, and just as essential to the general welfare and the wholesome administration of justice as statutes upon any other subject, and to be construed with the same favor to effect the legislative intent. *People ex rel. Gorman v. Newaygo Circuit Judge*, 27 Mich. 138.

The foregoing fairly indicates the view generally taken of limitation statutes at the present date. There are decisions here and there that are not in harmony with the modern doctrine, but the weight of authority is so great in support of it that it has been generally written into the text-books as settled law. In 13 Am. & Eng. Ency. of Law (1st ed.), 692, it is said that statutes of limitations are now almost universally regarded favorably as statutes of repose; and the decisions to the contrary are disapproved, citing a multitude of cases. To substantially the same effect are 1 Wood, Limitations, 7, and Angell, Limitations (6th ed.), 18.

Turning to the decisions of this court it will be found that the foundation idea which led to the early perversion of the

legislative purpose in devising a system of limitation statutes,— that they were designed to act on the remedy only,
taking that away but leaving the legal right otherwise unimpaired,— was rejected at the commencement of our judicial history. In that respect more advanced ground was
early taken here than that then or since occupied by many
courts which have rejected the old notion that limitation
statutes are to be strictly construed and defenses under them
treated with disfavor. The idea that a defense under such
a statute is unconscionable and that courts may properly or
ought to so discountenance as to defeat it wherever judicial
favor is necessary to its availability, is grounded generally
on the theory that the right is never extinguished by the
statute. The idea that it extinguishes the right upon which
it operates as effectually as payment, and creates a new right
which cannot be taken away by legislative power or judicial
action without the consent of its possessor,— a right in the
nature of property protected by constitutional guaranties,—
it would seem is not wholly consistent with the idea that
the assertion of such right is dishonorable and should be
treated that way by the courts.

In *Sprecher v. Wakeley*, 11 Wis. 432, it was held that if
the bar of the statute is complete the legislature is powerless to give a remedy for the enforcement of the old right;
that it is a mistake to suppose that a limitation statute
affects the remedy merely; that it directly extinguishes the
right by creating another in its place of just as high a character as regards constitutional protection. That doctrine
has been steadily adhered to up to the present time, the
most recent and significant recognition of it being in *Eingartner v. Illinois S. Co.* 103 Wis. 373, where it was said
that 'a bar to a claim created by the operation of a statute
of limitation is as effectual as payment or any other defense;
that it creates a vested right of defense which of itself must
be regarded as a species of property within constitutional

guaranties; and that it completely supersedes, annuls, and extinguishes that upon which it operates.'

From what has been said it would seem that the doctrine that the defense of the statute of limitations is discreditable should not be maintained alongside of the doctrine that the bar of the statute extinguishes the right upon which it operates. The former seems to have found a place in the decisions of this court, at first in *Orton v. Noonan*, 25 Wis. 672. In *Plumer v. Clarke*, 59 Wis. 646, it was said, in substance, that the effect of the decisions of this court is that the defense of the statute of limitations by an individual is unconscionable, but that such a defense by a municipality is not so regarded. That is well entrenched in our jurisprudence and is wholly of judicial creation and confined within quite narrow limits. In later cases the defense under discussion was treated substantially the same as other defenses, though the court adhered to the doctrine that it is unconscionable.

In *Smith v. Dragert*, 65 Wis. 507, there was a failure to plead the statute in the first instance through ignorance of the defendant's attorney. The trial court held that a special plea of the statute was unnecessary. For that error the judgment was reversed on appeal to this court. Subsequently the trial court relieved the defendant from the mistake of his attorney on payment of $10 costs and the costs of the action up to the time of applying for such relief. This court said that such action was a proper exercise of judicial discretion. In *Illinois S. Co. v. Budzisz*, 106 Wis. 499, such an amendment was allowed on the trial to avoid the mistake of the defendant's attorney, no terms being imposed other than that the trial should not be delayed. That was held a proper exercise of judicial discretion, it appearing that the plaintiff was not prejudiced by the delay in pleading the statute. Following other decisions it was said, in effect, that the discretionary power of the court to relieve a party from excusable mistake in respect to pleading the statute of limitations

is the same as in respect to any other mistake in making up the issues in a case for trial. In this connection, without referring to the cases in detail, it may be said that no case can be found in our books where the discretionary power of the trial court to allow the statute of limitations to be pleaded by amendment has been denied, or where the exercise of that power has been disturbed, except for clear abuse of judicial discretion in that the favor was granted without the imposition of terms to prevent the opposite party from being prejudiced by the delay. In the very recent case of *Sullivan v. Collins,* 107 Wis. 291, the trial court permitted such an amendment upon the trial without any excuse for the delay being given or any terms or conditions of granting the favor being imposed. That, on appeal, was held an abuse of discretion, reference being made to the doctrine as established, that the defense of the statute of limitations is not treated with the same favor as ordinary defenses and is classed as unconscionable. It was recognized, however, that the power of the court to allow such an amendment is as broad as to allow any other, subject to such exercise as to indicate some degree of judicial discretion.

In view of the foregoing, testing the decision appealed from by right in the abstract, we might well hold that it is clearly wrong. But we must go further, since there is reasonable ground to say that the judicial policy of this state is not clearly in harmony therewith. Notwithstanding the fact that the defense of the statute of limitations is here placed on the highest plane as regards its legal status, and the fact that in the course of our judicial administration a defense of the statute of limitations has been treated the same as others, the idea that there is an element of dishonor involved in the assertion of it, which stamps it as unconscionable, has not been removed from our system. It is preserved therein by the latest expression of the court on the subject, as above indicated.

It follows that we cannot say but that a trial court might reasonably consider, in deciding upon an application for judicial favor for relief from a mistake in failing to properly plead a vested right under a limitation statute, that the assertion of the right is in a sense dishonorable and upon that theory alone deny the application, regardless of the excusability of the mistake and of the ability of the applicant to save the opposite party harmless from injury because of delay in pleading the defense. Trial courts are expected to be guided by the decisions of this court, and where they reasonably submit to such guidance and considerately decide accordingly, their decisions should not be disturbed even though the result be that the question involved, as an original proposition, is decided wrong. The rule of *stare decisis* must go that far, even where the judicial rule involved, though wrong, need not be sustained as a rule of property, the disturbance of which would be injurious to public interests. Such an adherence to judicial policy may cause a sacrifice of individual rights in a case now and then, but it is better that it should be that way than that the result of a fair exercise of judicial discretion should be invaded. That does not militate at all against judicial freedom in appellate courts to correct their own errors in all proper cases.

The result is that we must hold that the trial court did not overstep the boundaries of judicial discretion in refusing appellants leave to amend their demurrers, while at the same time it is made sufficiently significant as not to be lost sight of hereafter that the logical result in the whole is to discountenance the seeming inconsistency between the doctrine that the bar of the statute of limitations extinguishes the right and creates another in the nature of property protected by constitutional guaranties, and the doctrine that the assertion of such new right is unconscionable. That makes harmony here, and, as regards the nature of the defense discussed, substantial harmony between the doctrine

here and the weight of authority elsewhere, and gives full effect to the legislative purpose.

*By the Court.*— The judgment of the circuit court is affirmed.

A motion by the appellants for a rehearing was, on February 1, 1901, held to have been waived by failure to serve and submit the arguments within the time required by Rule XX of this court.