ROACH, Appellant, vs. SANBORN LAND COMPANY, imp., Respondent.

*March 31—April 17, 1908.*

*Promissory note payable to maker: Validity: Transfer: Time of indorsement: Presumption: Trust deed: Transfer of note secured: Transferee's right to security: Statute of limitations: Effect on security: Parties: Holder of note enforcing security: Tax deed: Payments on redemption: Practice: Conclusiveness of trial court's findings.*

1. A note payable to the order of the maker has no validity until it is negotiated, and when indorsed in blank by the maker it becomes payable to bearer and may be transferred by delivery.
2. There is a presumption that the indorsement of a note takes place at or about the date of the note, and where a party's right to land, mortgaged to secure notes payable to the maker's order, depended upon whether the land was conveyed before or after the notes were negotiated by the maker, the burden was upon such party to prove that the notes had not been negotiated at the time the land was conveyed, and in the absence of such proof the negotiation is *held* to have taken place before the land was conveyed.
3. The H. Co. executed promissory notes payable to its own order and secured by trust deeds to L. covering certain of its lands. The notes were negotiated by the maker to Y., who sold and delivered them without indorsement to plaintiff, executing at the same time a paper purporting to transfer his interest in the trust deeds. *Held*, that plaintiff succeeded to the rights of Y. and acquired the lien created by the trust deeds, and was consequently competent to maintain a suit under sec. 3186, Stats. (1898), to test the validity of certain tax deeds held by defendant covering the land included in the trust deeds.

4. While the statute of limitations effectively extinguishes liability so that if properly pleaded it will bar any action to enforce the liability, still the extinguishment.is only at the option of the obligor, and an action may be brought and a recovery had unless the statute is specially pleaded..

5. Where a debt is secured by mortgage the remedy to enforce the lien may be prosecuted after the debt is barred by the statute of limitations, although the defense of the statute is pleaded.

6. Where a debt secured by mortgage is barred by the statute of limitations and an action is brought to enforce the lien there can be no deficiency judgment for any balance remaining due upon the indebtedness.

7. A trust deed given to secure a note is, like a mortgage, accessory thereto, and the transfer of the note carries with it the security of the deed without formal assignment, notwithstanding that at the time of the transfer any action on the note was barred by the statute of limitations.

8. Where a finding of fact by the trial court is not excepted to it must be taken as a verity on appeal.

9. A trustee in a trust deed given to secure certain notes who refused, after request by the holder of the notes, to bring an action to test the validity of tax deeds covering the land included in the trust deed, is not a necessary party to an action brought for the same purpose by the holder of the notes, such holder by his acquisition of the notes having acquired the lien created by the trust deed, and being entitled to bring an action in his own name under sec. 2605, Stats. (1898).

10. A tax-title claimant who subsequently acquired a title to the same land through mesne conveyances was under no obligation to pay the taxes either when they were levied or when he acquired the tax title, and therefore a person seeking to redeem from such tax title should pay into court, under sec. 1210$h$, Stats. (1898), the amount for which the land was sold as well as the taxes subsequently paid by the tax-title claimant, together with the statutory interest.

APPEAL from a judgment of the circuit court for Forest county: JOHN GOODLAND, Circuit Judge. *Reversed.*

This suit was brought by the appellant on November 24, 1902, as the owner of certain notes secured by trust deeds on lands in Forest county, and as the beneficial holder of said trust deeds, to set aside certain tax titles held by the re-

spondent, the *Sanborn Land Company*, which was joined with other defendants. In 1893 the lands were owned by the T. W. Harvey Lumber Company, an Illinois corporation, with its office at Chicago, and on August 1, 1893, it executed two trust deeds to David B. Lyman, trustee, to secure three promissory notes payable three years after date to its own order, aggregating $4,600. The notes bear the indorsement in blank of T. W. Harvey Lumber Company, but there is no direct proof to show when they were actually negotiated. The proof shows that the notes were in the possession of C. S. Young in October, 1902, and that on November 3, 1902, he sold and delivered them to the appellant, but without indorsement. C. S. Young at the same time executed a paper in the form of a receipt for the consideration therein stated for the trust deeds executed to Lyman as trustee, evidently intending thereby to transfer his interest therein. The T. W. Harvey Lumber Company conveyed the lands by quitclaim deed to Belle S. B. Harvey April 2, 1895, and it did not affirmatively appear that the notes secured by the trust deeds had been negotiated prior to that date, although the trust deeds had been recorded October 7, 1893.

The complaint alleges that the plaintiff is the sole owner of the notes and of all right, title, and interest and powers expressed and contained in said trust deeds, the failure of the corporation to pay the notes and the amount due thereon, and the issue of the tax deeds, which are charged to be void, through which the defendants seek to establish title to the lands. The answer sets up the tax deeds as valid conveyances of the land and as establishing an adverse title, and, except as admitted, denies the averments of the complaint.

The court finds that on August 1, 1893, the T. W. Harvey Lumber Company, being the owner of the lands, pretended to execute the trust deeds thereon to David B. Lyman, as trustee, to secure payment of the notes mentioned, which were made payable to the order of said company; that some

time prior to the month of October, 1902, said company transferred said notes to said C. S. Young, and on November 3, 1902, Young transferred the same to the plaintiff; that on the 2d of April, 1895, while the said T. W. Harvey Lumber Company was the owner of the notes and before any of them had been negotiated, said company conveyed the land described in the complaint to Belle S. B. Harvey by quitclaim deed, which was recorded in June, 1895, and the title so conveyed is now vested by mesne conveyances in the *Sanborn Land Company,* which is the owner in good faith for a valuable consideration and was such owner at the time the action was commenced. The court finds that the trust deeds were never transferred to the plaintiff and that he at no time acquired any interest in the land described, and that none of the tax deeds had been three years of record at the time the action was commenced. From the judgment entered on the findings this appeal is taken.

*Samuel Shaw,* attorney, and *A. W. Shelton,* of counsel, for the appellant.

For the respondent the cause was submitted on the brief of *A. W. Sanborn.*

BASHFORD, J. The first question raised on appellant's brief relates to the invalidity of the tax deeds, and numerous defects are pointed out which seem fatal to these instruments as conveyances of the land. The court has found that none of them had been of record for three years prior to the commencement of the action, hence they are open to attack. Respondent's counsel does not seek to support the validity of the tax deeds, hence we may assume that this defense is abandoned.

The controlling question in this case is whether or not the appellant held a valid lien on the premises described in the complaint. Sec. 3186, Stats. (1898), authorizes any person not having title or possession, but being the owner and

holder of any lien or incumbrance on land, to prosecute an action to test the validity of any adverse claim to such land. *Coe v. Rockman,* 126 Wis. 515, 106 N. W. 290. The appellant's right to a lien must be derived from the transfers to him by C. S. Young on November 3, 1902, of the notes and trust deeds, so far as the latter were the subject of assignment. The statute of limitations had then run upon the notes and they were transferred without indorsement. These notes were executed August 1, 1893, payable to the order of the maker, and could have no validity until after negotiation. They were indorsed in blank by the maker, and hence became payable to bearer and subject to transfer by delivery. There is no direct proof to show when the indorsements were made and the notes negotiated. The court found that the T. W. Harvey Lumber Company, the maker, was the holder of the notes payable to its own order on April 2, 1895, when it executed the quitclaim deed to Mrs. Harvey conveying to her the land described in the trust deeds. Our attention has been called to no proof to support this finding and we have been unable to discover any in the record. Respondent's counsel contends that it was necessary for the appellant to prove that these notes had in fact been negotiated prior to the execution of the quitclaim deed to Mrs. Harvey through which it had derived title to the land. This position is not tenable. On the contrary, the court holds that the plaintiff may rest upon the presumption arising from the negotiation of the paper, and that the burden was upon the defendant to prove that the notes were held by the maker at the time the quitclaim deed was executed.

"The general rule is that an indorsement, in the absence of any evidence to the contrary, is always presumed to have been made at or about the date of the note." *Mason v. Noonan,* 7 Wis. 609, 618.

The notes and trust deeds were executed August 1, 1893, the latter recorded October 7, 1893, and the quitclaim deed

was executed April 2, 1895. As the notes were payable to the order of the maker and could have no validity while they were in its possession, it is reasonable to presume that they were negotiated and in the hands of an innocent holder prior to the execution of the quitclaim deed. Upon the record here presented, we must conclude that the notes had been negotiated prior to the conveyance to Mrs. Harvey through which the respondent asserts its claim.

It is urged with much force on behalf of the respondent that the statute of limitations had run upon the notes before the transfer to the appellant, and consequently they were as effectually extinguished as if they had been satisfied by actual payment. That rule has been frequently applied where the action was brought to enforce the right and the bar of the statute was properly pleaded. *Eingartner v. Ill. S. Co.* 103 Wis. 373, 79 N. W. 433. It is as firmly settled as the law of this state that the statute of limitations extinguishes the right only at the option of the obligor and that an action may be brought and a recovery had thereon unless the bar is specially pleaded. *Whereatt v. Worth,* 108 Wis. 291, 84 N. W. 441. The rule is also established that if the indebtedness is secured by mortgage the remedy to enforce the lien may be prosecuted after the debt is barred, although the defense is pleaded. *Hughes v. Thomas,* 131 Wis. 315, 111 N. W. 474. But in such case there can be no deficiency judgment for any balance remaining due upon the indebtedness. *Pereles v. Leiser,* 119 Wis. 347, 96 N. W. 799. The difficulty here arises from the application of these somewhat conflicting rules to the facts as presented on this record. The appellant became the holder of the notes after the statute had run and after they had become subject to this defense in an action upon them against the maker. They were nevertheless outstanding obligations, presumptively in the hands of an innocent holder, subject to transfer by delivery, which might be enforced against the maker unless the statute was

specially pleaded as a defense.   The trust deeds were given as security for the payment of the notes, and, like a mortgage, were an accessory to these instruments.   *McCourt v. Peppard,* 126 Wis. 326, 105 N. W. 809.   The transfer of the notes carried with them the security without formal assignment.   *Potter v. Stransky,* 48 Wis. 235, 4 N. W. 95.   Moreover, at the time the appellant purchased the notes he received from Young what evidently was intended as an actual transfer of the security.   The deeds executed to the trustee were not subject to formal assignment by the holder of the notes thereby secured.   C. S. Young, having become the holder of the notes prior to their maturity, was the beneficial owner of the rights secured by the trust deeds, and he could have maintained this suit to test the validity of any adverse claims asserted against the lands therein described.   The court holds that the appellant, by the transfers above mentioned, succeeded to the rights of C. S. Young and acquired the lien created by the trust deeds, and consequently is authorized to maintain this suit to set aside the adverse claims to the land. The assignment of a demand entitles the assignee to every assignable remedy, lien, or security available by the assignor as a means of indemnity or payment, unless expressly excepted in the transfer.   *Schlieman v. Bowlin,* 36 Minn. 198, 30 N. W. 879.

It is further urged on behalf of the respondent that the action should be dismissed as against the *Sanborn Land Company* upon the ground that it had conveyed the land in question to a third party before the commencement of the suit, and that this deed was recorded before the filing of the *lis pendens.*   The finding of the court was to the contrary, and, as there appears to be no exception thereto, it must be accepted as a verity.

It was urged in the trial court that the action should be dismissed because the trustee, although named as a party defendant, had not been served with summons and com-

plaint. The complaint alleges and the proof shows that the trustee, when requested by the appellant, had refused to bring the suit, and consequently it was not necessary to make him a party. Appellant was the real and sole party in interest, and, as he had acquired the lien created by the trust deeds, might maintain the action in his own name. Sec. 2605, Stats. (1898).

It seems from the record that the respondent derived title to the land through mesne conveyances from Mrs. Harvey after it had acquired the tax titles, and hence was under no obligation to pay the taxes either when they were levied or when it acquired the tax titles. Under sec. 1210$h$ the amounts for which the land was sold, as well as the amounts of subsequent taxes paid by the tax-title claimant, should be ascertained and an order made requiring such sums to be paid into court, with interest at fifteen per cent., within a time to be fixed by the court, and, in default of such payment, judgment to be rendered for the defendant; but, in case of such payment, judgment to be rendered for the plaintiff canceling the tax deeds.

*By the Court.*—Judgment reversed, and the cause remanded for further proceedings and for judgment in accordance with this opinion.