KORNITZ, Administrator of the Estate of Howard A. Kornitz, Deceased, Plaintiff-Respondent, v. COMMONWEALTH LAND TITLE INSURANCE COMPANY, and others, Defendants-Respondents: HARTFORD ACCIDENT & INDEMNITY COMPANY, Petitioning Intervenor-Appellant.†

*No. 75–820. Argued November 29, 1977.—Decided January 3, 1978.*
(Also reported in 260 N.W.2d 680.)

† Motion for rehearing denied, with costs, on March 3, 1978.

For the appellant there were briefs by *Terrence J. Gaffney,* and *Burke & Schoetz,* and oral argument by *Mr. Gaffney,* of Milwauke.

For the respondent there was a brief by *John W. Emmerling* and *Edward D. Styles,* and oral argument by *Mr. Emmerling,* of Milwaukee.

BEILFUSS, C. J. The order appealed from denied the motion of Hartford Accident and Indemnity Company to intervene in the action brought by Bruce Kornitz, Administrator of the Estate of Howard A. Kornitz, deceased, against Commonwealth Land Title Insurance Company and Midland National Bank. The action is to recover the balance of the purchase price for the sale of all the stock of a title insurance company.

The primary issue is whether the trial court abused its discretion in refusing to allow intervention by Hartford.

Howard A. Kornitz and Harold N. Ewert were the owners of all of the stock of several title insurance com-

panies, one of which was the Midland Title Insurance Company. On February 28, 1966, a promissory note in the amount of $500,000 was executed by Howard A. Kornitz, Harold N. Ewert and Jean F. Ewert in favor of Midland National Bank. All of the stock of Midland Title was pledged to Midland National Bank as collateral.

Prior to September 26, 1966, the title company was an authorized agent of Commonwealth Land Title Insurance Company. On April 7, 1967, Commonwealth, Midland Bank, Howard Kornitz and Harold Ewert as stockholders entered into an agreement which sold the Midland Title Company to Commonwealth.

By the terms of this agreement Midland Title was sold to Commonwealth in return for the difference between $400,000 and the total loss suffered by Commonwealth by reason of claims against the title company or Commonwealth up to September 27, 1966. This was to be paid by April 1, 1970.

Midland National Bank released the pledged stock to Commonwealth in return for an assignment by Kornitz and Ewert of their right, title and interest in the purchase price. As collateral for its right to the purchase price, Midland Bank received a $200,000 certificate of deposit from Commonwealth.

The contract stated that the agreement was not to be construed to relieve stockholders of their liability under the $500,000 note. "Upon receipt of any part of the purchase price the money shall be applied first to any then outstanding balance of the $500,000 indebtedness of Stockholders to Midland Bank with any balance to Stockholders." Commonwealth paid Midland $100,000 in exchange for a subordinated position on the $500,000 note. Thus, first Midland Bank and then Commonwealth would receive purchase price money before the stockholders, Kornitz and Ewert, were entitled to any proceeds.

Although not apparent from the 1967 agreement, the Hartford Accident and Indemnity Company paid the

$100,000 participation interest in the note for Commonwealth. This is important as a basis for Hartford's interest as an intervenor.

When the April 1, 1970 due date on the 1967 agreement passed, Commonwealth, which was having trouble ascertaining losses, prevailed upon Midland Bank to hold its claims in abeyance. On December 7, 1969, Howard A. Kornitz died. His estate commenced this action on November 12, 1971 against Commonwealth and Midland Bank, claiming that the obligations owed Midland Bank under the 1967 agreement were fulfilled and also claiming that Commonwealth owed it money as part of the purchase price. Midland denied that the obligations of Howard A. Kornitz and Harold N. Ewert had been paid in full. Commonwealth claimed it had paid all the money due Midland in September, 1971, but denied that Kornitz and Ewert had fulfilled all their obligations or that any balance was due them.

On February 4, 1975, a stipulation and order between Midland Bank and the estate of Kornitz was filed whereby Midland Bank renounced any and all claims which it had ever had under the 1967 agreement, and Kornitz renounced any claim it might have against Midland Bank. Midland Bank was dismissed from the action.

Both Commonwealth and the estate made motions for summary judgment, the estate claiming that it had money due, Commonwealth asserting that it had paid the purchase price. The trial court denied both motions on May 22, 1975, noting that facts were in dispute.

On January 13, 1976, the Hartford Accident and Indemnity Company filed a motion for leave to intervene. It alleged that it was an interested party for the reason that the sums allegedly owed to the estate by Commonwealth were to be paid to Midland Bank under the 1967 agreement and that all right, title and interest of Midland Bank in the 1966 note had been assigned to Hartford. Hartford alleged that this assignment took place

on December 29, 1972, and that $118,729.77 plus $142,770 interest was due on the note at that time. Hartford therefore contended that if the estate should recover any sums from Commonwealth it was entitled to such sums as payment on the note which it now held. This assignment is not in the record. Hartford claims that the assignment of the 1966 note included Midland's right to the purchase price under the 1967 agreement.

The estate responded by averring that Midland's rights under the 1967 agreement were separate from rights under the 1966 note, that Midland's 1975 stipulation indicates this and extinguished any claim which Hartford might have had, that Hartford should be estopped, that there was no claim made by Hartford against the estate within the statutory claims period, that Hartford is barred by laches, and that Hartford did not own Commonwealth's $100,000 participation interest.

The trial court denied the motion to intervene on February 5, 1976. Hartford appeals.

The trial court correctly concluded that Hartford owned Commonwealth's $100,000 participation interest in the 1966 note. Commonwealth's amended answer in the estate's suit against it indicates that Hartford paid the $100,000 pursuant to a fidelity bond and that Hartford was subrogated in that sum against the stockholders' debt. It appears, however, that any purchase price which might be due on the 1967 agreement would not be sufficient to satisfy the subordinated position on the 1966 note.

The trial court refused to find that Midland's right in the 1967 agreement passed to Hartford along with the 1966 note.

The December, 1972, assignment from Midland Bank to Hartford is not in the record; however it is referred to in both the petition to intervene and the proposed complaint. Giving the petition to intervene and the proposed complaint a liberal interpretation as should be done

at this stage of the proceedings, it is presumed the assignment was unqualified.

Relying on this presumption, it is clear that Midland National Bank's right to the purchase price under the 1967 agreement was security for the 1966 promissory note. Originally the note was secured by the pledge of the stock of the title company. Then Midland agreed to release the pledged stock in return for rights under the 1967 agreement. One of these rights was the receipt of payments on the purchase price up to a certain amount.

When the 1966 note was assigned to Hartford it included the underlying security. In *Tullgren v. School District,* 16 Wis.2d 135, 142, 113 N.W.2d 540 (1962),[1] this court cited 6 C.J.S., *Assignments,* p. 1136, sec. 82 (now 6A C.J.S., Assignments, pp. 710–12, sec. 73) :

"As a general rule, a valid and unqualified assignment operates to transfer to the assignee all the right, title, or interest of the assignor in the thing assigned, but not to confer upon the assignee any greater right or interest than that possessed by the assignor. It passes the whole right of the assignor, nothing remaining in him capable of being assigned, and the assignor has no further interest in the subject matter of the assignment."

6A C.J.S., *Assignments,* p. 720, sec. 76, states:

"An unqualified assignment of a debt or chose in action ordinarily carries with it, as incidents, all rights of priority or preference, and all collateral securities or liens, together with all rights incidental thereto, previously held by the assignor to obtain or secure payment of the debt."

---

[1] *Also see Roach v. Sanborn Land Co.,* 135 Wis. 354, 360, 115 N.W. 1102 (1908) ; *Brainerd, Shaler & Hall Quarry Co. v. Brice,* 250 U.S. 229, 233 (1919) ; *United States v. Tyler,* 220 F. Supp. 386, 395 (N.D. Ia. C.D. 1963) ; and Restatement of the Law, *Contracts,* p. 219, sec. 171(2) (1932). The cases state that the rule applies only if not qualified by the terms of the assignment.

Thus, if Midland had not released the stock pledged as collateral on the 1966 note, Hartford would have taken Midland's rights in the security along with the assignment of the note. We see no reason why Hartford should not also be entitled to security arising after the 1966 note had been executed. The security referable to that note takes the place of the original security which Hartford clearly would have been entitled to under the presumable unqualified assignment.

It is apparent that Hartford has an interest in the suit by virtue of the assignment of Midland National Bank's rights to the purchase price under the 1967 agreement.

The questions remain as to whether the estate's defenses bar Hartford's interest and whether the trial court abused its discretion by refusing intervention.

We first consider the significance of the stipulation between Midland and the estate by which Midland renounced all claims under the 1967 agreement. If the 1972 agreement from Midland to Hartford was unqualified, Midland no longer had any rights to the purchase price and its 1975 stipulation was ineffective against Hartford.

The estate argues that even if Midland's interests had been assigned, Hartford is barred from challenging the stipulation because it never gave notice to the estate.

In *Drzewiecki v. Stempowski*, 232 Wis. 447, 450-51, 287 N.W. 747 (1939), the court stated:

"It is the undoubted law of this state that payment by a debtor to his original creditor protects him against an assignee of the debt unless he has notice of the assignment."[2]

The record before us gives no indication that the estate was ever informed of the assignment. However, Hart-

[2] The Uniform Commercial Code, sec. 409.318(3), Stats., reiterates this notice requirement.

ford asks this court to take judicial notice of an affidavit allegedly filed in the circuit court for Milwaukee county on April 22, 1974, in the case of *Midland National Bank v. Grace Kornitz,* No. 384–989. This affidavit, by the estate's attorney, acknowledges that the estate received notice of the assignment on April 18, 1974. If this is true, the estate had notice of the assignment almost one year in advance of its stipulation with Midland.

This affidavit does not meet the standards set forth by this court with regard to judicial notice of facts outside the record. The court will take notice of adjudicative facts if they are either generally known, or capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. Sec. 902.01(2), Stats. The affidavit referred to is not generally known, nor is it capable of accurate and ready determination.[3]

Taking the record as we have it, it appears that the estate did not have notice of the assignment when it entered into the stipulation with Midland. Although the law on this subject concerns payment of debts to the assignor as foreclosing the assignee without notice, the stipulation is analogous to payment in that by renouncing its claims under the 1967 agreement Midland in effect discharged the debt.

Hartford, however, is not necessarily foreclosed by this argument. The defense of lack of notice is raised for the first time on appeal.

The general policy of this court is to refuse to hear issues raised for the first time on appeal. *Schneider Fuel v. West Allis State Bank,* 70 Wis.2d 1041, 1047, 236 N.W.2d 266 (1975); *Terpstra v. Soiltest, Inc.,* 63 Wis.2d 585, 593, 218 N.W.2d 129 (1974). Although this is not

[3] *Robison v. Borkenhagen,* 25 Wis.2d 408, 410, 130 N.W.2d 770 (1964).

an inflexible rule, the claim, embodied in the affidavit, that the estate did have notice, would be very material in the trial of Hartford's claim. After answer this issue can best be resolved at trial.

The estate alleged laches and cites *Hartwig v. Harvey*, 250 Wis. 478, 27 N.W.2d 363 (1947), where the court held that a trial court could properly deny leave to intervene where the motion to intervene was made one year after the action was commenced. Here the action began in 1971, the assignment took place on December 29, 1972, and the petition to intervene was filed on January 13, 1976. Thus Hartford waited for over three years before seeking to intervene.

There are three elements if laches is to prevail: (1) Unreasonable delay, (2) lack of knowledge on the part of the party asserting the defense that the other would assert the right on which it bases its suit, and (3) prejudice to the party asserting the defense if the action is maintained.[4]

The delay can be termed unreasonable. And because we should not consider the affidavit which supports Hartford's claim of notice, it appears that the estate was not aware that Hartford would assert a claim.

A more difficult issue is whether there is prejudice to the estate. The respondent-estate sets forth four factors which are alleged to be evidence of prejudice. The only one which might rise to the level of completing a case of laches is the settlement with Midland. However it appears from the face of the stipulation that the only consideration given by the estate in return for Midland's renunciation of claims was a corresponding renunciation. It is clear that the estate's only claim for which it could have received anything of value was against Common-

[4] *Schneider Fuel v. West Allis State Bank*, 70 Wis.2d 1041, 1053, 236 N.W.2d 266 (1975).

wealth, not Midland. Therefore the estate lost nothing to its prejudice by this stipulation.

The estate also claims that Hartford should be estopped from asserting its rights. The general rule on equitable estoppel is that there must be (1) action or inaction which induces, (2) reliance by another, (3) to his detriment.[5] The estoppel claimed here is one of inaction—estoppel by silence.

For this to apply, Hartford must have had a duty to speak.[6] Hartford did have a duty to give notice as Midland's assignee. There is also evidence of reliance upon the stipulation with Midland. But again, as with the issue of prejudice in the laches, there is no showing of any substantial detriment. The estate could believe that Midland's claims were extinguished but it did not change its position in any significant way as a result of such reliance.

A final defense raised by the estate is that neither Hartford nor Midland made a claim on the estate within the statutory claims period. However, a secured creditor need not file a claim on an estate if he is content to rely on his security. Sec. 859.43(1), Stats., reflects this policy. Although this statute was not in effect at the time this case arose, the common law doctrine is well established.

A secured creditor may take three courses against an estate. He may file a claim for the full amount of the debt, file a contingency claim to protect his rights to a deficiency judgment, or rely on his security to which he has a right even if no claim is filed.[7]

---

[5] Id. at 1054.

[6] *Mortgage Associates v. Monona Shores*, 47 Wis.2d 171, 185, 177 N.W.2d 340 (1970).

[7] *McLean v. McLean*, 184 Wis. 495, 500, 199 N.W. 459 (1924); *Edgerton v. Schneider*, 26 Wis. 385, 388 (1870); *Schmidt v. Grenzow*, 162 Wis. 301, 302, 156 N.W. 143 (1916); Annot. 78 A.L.R. 1126.

While the Wisconsin cases all deal with debts secured by mortgage, it follows that a secured creditor retains his rights in any security in spite of failure to file.[8]

Because Hartford's claim is not barred by any of the estate's defenses, the final issue becomes whether the trial court abused its discretion by denying leave to intervene. The intervention statute applicable in this case is sec. 260.205,[9] Stats. (1969).

This statute, unlike the present sec. 803.03 or the preceding sec. 260.19, provides for discretionary intervention. Hartford has cited many cases which concern mandatory intervention under these other statutes and Rule 24 of the Federal Rules of Civil Procedure. One of these cases, however, is of importance because it states that intervention statutes should be liberally construed. *Fish Creek Park Co. v. Bayside,* 273 Wis. 89, 92, 76 N.W.2d 545 (1956).

In *Capitol Indemnity Corp. v. Morris,* 46 Wis.2d 527, 531, 175 N.W.2d 479 (1970), the court stated that the only question involved under sec. 260.205, Stats., is whether the trial court abused its discretion by denying a motion to intervene; there is no right to intervention. In both *Capitol Indemnity* and in *Mercantile Contract Purchase Corp. v. Melnick,* 47 Wis.2d 580, 177 N.W.2d

[8] 34 C.J.S., *Executors & Administrators,* sec. 368; 31 Am. Jur.2d Executors & Administrators, sec. 296; *see also* Uniform Probate Code, secs. 3–803(c)(1), 3–812, 3–814.

[9] *"Intervention.* If in an action for the recovery of property, a person not a party has an interest in the property, or if in any other action, a person not a party has such an interest in the subject matter of the controversy as requires him to be a party for his own protection, and such person applies to the court to be made a party, the court may order him brought in. The motion shall be accompanied by a complaint or answer stating the cause of action or defense desired to be interposed. If the motion is granted the court shall indicate in its order the existing parties on whom the pleading should be served, and the time within which it should be served. If answer or reply is proper, the party served shall have 20 days in which to answer or reply."

858 (1970), the party sought to intervene after judgment. In both cases the denial of intervention was held proper. In this case Hartford sought to intervene prior to judgment.

This does not mean that Hartford's motion should have been granted. Although the instant delay did not constitute laches or estoppel standing alone, it could be a basis for discretionary refusal to intervene.[10]

However, it does not appear that unreasonable delay was a basis for the trial court's decision. The fact findings of the trial court emphasize the failure to file a claim against the estate and the lack of an interest in the 1967 agreement. As noted above, Hartford does have an interest and did not need to file a claim against the estate.

We conclude Hartford should have been allowed to intervene. It has an interest in the subject matter and participation in the action will allow Hartford an opportunity to prove that interest. Under these facts we conclude it was an abuse of discretion to deny the motion to intervene.

The estate's last complaint goes to the sufficiency of appellant's appendix. It asks for double costs and affirmance without opinion. While some useful materials were not included, the appendix is not "wholly inadequate."[11] In the exercise of our discretion we deem an opinion is appropriate. Because the appendix was deficient to some degree, no appeal costs should be taxed.

*By the Court.*—Order reversed; no costs to be taxed.

[10] *See* Annot., 37 A.L.R.2d 1306.
[11] *Younger v. Rosenow Paper & Supply Co.*, 63 Wis.2d 548, 557, 217 N.W.2d 841 (1974).