Ned NIELSEN, Milton Scholl, Theresa Rojic, B. Lynn Nowak, Donald and Ida Birschel, Mark and Chris Mathews, Gertrude E. Nowak, Daniel Rojic, Andrew and Kathy Marks, Kenneth and Rajina Erback, Virgil Kujawski, Mark and Yvonne Tischer, George and Marge Martin, Ronald Lilland, Donald and Jane Volzka, Robert and Fay Franz, William and Leann Moore, Stanley and Carol Chmielewski, Alice Wilson, Keith and Cathy Farnham, Sophie Weidig, Bernard Heindl, Vernetta L. Wollerman, Randolph and Kathy Kossow and Sara and Chris Christon, Petitioners-Appellants,†

v.

WAUKESHA COUNTY BOARD OF SUPERVISORS, Lake Keesus Management District, Ken Schuette, Robert A. Schlidt, Nancy Dross, Richard Ray, Walter and Joyce Cook, John Fuchs, Donald Droegkamp, Karl Holt, Don Holt, Tom Milbrath, Kevin Kowalski, Terry Reinders, Mary Schlumpf, Tom Minrath and Dave Sanborn, Respondents-Respondents.

Court of Appeals

*No. 93–0010. Submitted on briefs June 11, 1993.—Decided July 28, 1993.*

(Also reported in 504 N.W.2d 621.)

†Petition to review denied.

502

On behalf of the petitioners-appellants, the cause was submitted on the briefs of *Paul F. Reilly* of *Hippenmeyer, Reilly & Moodie, S.C.* of Waukesha.

On behalf of the respondent-respondent, Waukesha County Board of Supervisors, the cause was submitted on the brief of *Danni L. Caldwell*, principal assistant corporation counsel of Waukesha. On behalf of the respondents-respondents, Lake Keesus Management District, Ken Schuette, Robert A. Schlidt, Nancy Dross, Richard Ray, Walter and Joyce Cook, John Fuchs, Donald Droegkamp, Karl Holt, Don Holt, Tom Milbrath, Kevin Kowalski, Terry Reinders, Mary Schlumpf, Tom Minrath and Dave Sanborn, the cause was submitted on the brief of *William P. O'Connor* of *Wheeler, Van Sickle & Anderson, S.C.* of Madison.

Before Nettesheim, P.J., Brown and Anderson, JJ.

NETTESHEIM, P.J.   On this appeal, we affirm the trial court's ruling that the requisite number of valid signatures supported a petition asking the Waukesha County Board of Supervisors to create the Lake Keesus Management District pursuant to subch. IV, ch. 33, Stats.

The appellants are landowners within the district who opposed the creation of the district. They petitioned the circuit court for judicial review of the board's action creating the district and named the county board as an adverse party. The individual respondents, also landowners within the district, supported the creation of the district. Over the objection of the appellants, these individuals, together with the newly created district, were allowed to intervene and to join the county board in resisting the appellants' petition in the circuit court proceeding. Following a hearing, the circuit court rejected the appellants' challenges to the county board's creation of the district and dismissed this petition. We affirm.

## STATUTORY PROCEDURE FOR CREATING AN INLAND LAKE PROTECTION AND REHABILITATION DISTRICT

Before reciting the facts, we summarize the statutory procedure by which a county board may create a public inland lake protection and rehabilitation district. Such a district may be created "for the purpose of undertaking a program of lake protection and rehabilitation of a lake or parts thereof within the district." Section 33.21, Stats. A county board may create such a

district. Section 33.24, Stats.[1] First, however, 51% of the landowners within the proposed district must file a petition with the county clerk asking that the district be established. Section 33.25(1), Stats.

The petition must recite the name of the proposed district, the boundaries of the proposed district, the necessity for the proposed district, that the proposed district will promote the public health, comfort, convenience, necessity or public welfare, and that the lands therein will be benefited by the proposed district. Section 33.25(2), Stats. The petition must be accompanied by a plat or sketch indicating the approximate area and boundaries of the proposed district. Section 33.25(3). Finally, the petition must be verified by one of the petitioners. *Id.*

Upon receiving the petition, the county board must arrange a hearing to be held not later than thirty days from the date of presentation of the petition. Section 33.26(1), Stats. The county board must also appoint a committee to conduct the hearing. *Id.*

Any person who objects to the organization of the proposed district may file such objections with the county clerk before the hearing date. *Id.* "At the hearing all interested persons may offer objections, criticisms or suggestions as to the necessity of the proposed district as outlined and to the question of whether their property will be benefited by the establishment of such district." *Id.*

Following the hearing, the committee shall report to the county board. Section 33.26(3), Stats. "If it appears to the board, after consideration of all objections, that the petition is signed by the requisite

[1] Subchapter IV of ch. 33, Stats., also provides other means by which an inland lake protection and rehabilitation district may be created.

owners as provided in s. 33.25" and if it further appears that the proposed district meets other stated statutory criteria, the board shall create the district. *Id.* "If the board finds against the petition, it shall dismiss the proceedings. . . ." Section 33.26(4). "Any person aggrieved by the action of the board may petition the circuit court for judicial review." Section 33.26(7).

## FACTS

The governing facts, while lengthy and somewhat tortured, are not disputed. The petition in this case actually consists of sixteen separate petitions which were circulated by landowners within the proposed district.[2] Each of these owners/circulators also executed a written statement reciting that "the signatures on the petitions attached hereto are true and correct to the best of his/her knowledge." However, these statements were not actually affixed to the particular petition to which they pertained. In this separate form, these petitions and statements were delivered on July 1, 1991 to the town clerk for the town of Merton.

The town clerk then forwarded these materials to the county clerk together with a letter stating, "The signatures on the enclosed petitions have been verified by this office as accurately as possible using the information we have." The county clerk construed the town clerk's letter as an attempt to meet the verification requirements of sec. 33.25(3), Stats. Because the stat-

---

[2] Actually, seventeen petitions were filed with the county clerk. The respondent county (but not the individual respondents or the respondent district) concedes that the petition circulated and verified by Sherry Roberts containing nineteen signatures was properly disqualified because Ms. Roberts was not a landowner within the proposed district and therefore did not qualify as a petitioner. *See* sec. 33.25(3), Stats.

ute requires that verification of the petition must be made by one of the petitioners and because the town clerk was not one of the petitioners, the county clerk returned the petitions to the town clerk.

Later the same day, the petitions and the statements of the owners/circulators were refiled with the county clerk. This time, however, the statement of each owner/circulator was affixed to the particular petition to which the statement pertained. In this revised form, the county clerk accepted the petitions. In accord with the statutes, the county board scheduled a public hearing, directed its standing Land Conservation Committee to conduct the hearing and published a notice of the hearing.

The committee conducted the public hearing on July 29, 1991. After the hearing, certain petitioners wrote to the county clerk asking to have their names removed from the petitions. The clerk forwarded this information to the committee. On August 20, 1991, the committee met to consider its report to the county board. The discussions at this meeting focused on the validity of some of the petition signatures and the withdrawal requests by some of the petitioners. Ultimately, the committee voted to recommend against the creation of the district.

Thereafter, the committee received additional information from the town clerk regarding the disputed signatures. In light of this information, the committee revisited this matter at a meeting on September 4, 1991. After discussing the issue, the committee voted to reopen its recommendation to the county board. The committee then postponed the matter so that it could acquire additional information regarding the validity of some of the signatures and the withdrawal requests from some of the petitioners.

The committee also consulted the Waukesha county corporation counsel for its opinion. The corporation counsel advised the committee that the petition withdrawal requests did not affect the validity of the petition because the requests had not been presented until after the public hearing. Instead, the corporation counsel advised the committee to consider the withdrawal requests as objections to the proposed district. The corporation counsel also stated that it, together with the county clerk, would investigate the remaining challenges to the signatures and then report back to the committee.

On October 2, 1991, the committee again considered the matter. The committee again voted to recommend against the proposed district. The committee confirmed this recommendation at a subsequent meeting on October 16, 1991, when it approved a report to the county board documenting its rejection of the proposal.

The matter came before the county board on December 17, 1991. It appears, however, that the only issue which the board considered at this meeting was the validity and sufficiency of the signatures on the petitions. After hearing from the corporation counsel on this point, the county board rejected the recommendation of the committee. The county board then sent the matter back to the committee to consider the other statutory criteria. *See* sec. 33.25(2)(b) & (c), Stats.

At a meeting on January 2, 1992, the committee determined that the proposed district satisfied the other statutory criteria. Therefore, the committee recommended to the county board that the district be created. At a meeting on January 21, 1992, the county board formally adopted a resolution creating the district.

509

On judicial review to the circuit court, the appellants raised a host of challenges to the signatures on the petitions. The appellants contended that the alleged defects (in some instances individually and in other instances collectively) reduced the number of valid signatures supporting the petition below the 51% figure required by sec. 33.25(1), Stats. The circuit court rejected the appellants' challenges. They appeal.

For purposes of this appeal, we adopt the county's count of 339 landowners in the proposed district.[3] Thus, the requisite number of valid petition signatures must total at least 173 (51% of 339, rounded off to the next highest number). The number of signatures on the petitions filed with the county clerk totaled 238. We now examine the appellants' challenges to determine if the requisite number of valid signatures supported the petition.

## SCOPE OF REVIEW AND STANDARD OF REVIEW

The appellants brought this case to the trial court as a statutory certiorari judicial review proceeding. The respondents met this challenge in certiorari terms, and the trial court addressed the issue under a certiorari scope of review. We note, however, that sec. 33.26(7), Stats., does not expressly state that judicial review of a county board's creation of an inland lake district is by certiorari.[4] We make no determination in

---

[3] Ironically, the appellants present a lower figure. Our selection of the respondents' figure favors the appellants since it correspondingly increases the requisite number of signatures needed to satisfy the statutory figure of 51% of the landowners in the proposed district. *See* sec. 33.25(1), Stats.

[4] The case law has previously spoken to the distinction between common law certiorari and statutory certiorari and the effect of this distinction on the scope of review. *See, e.g.,*

this case whether the statute's failure to speak in certiorari terms might make the scope of judicial review different than that contemplated by statutory certiorari. We choose to conduct our review under statutory certiorari principles because that is the manner in which the parties brought the case to the trial court and further bring the matter to us.

When conducting statutory certiorari judicial review, our standard of review of the circuit court ruling is *de novo. See State ex rel. Hippler v. City of Baraboo*, 47 Wis. 2d 603, 616, 178 N.W.2d 1, 8 (1970). When reviewing a decision by statutory certiorari, we accord a presumption of correctness and validity to the decision of the board or agency. *Arndorfer v. Sauk County Bd. of Adjustment*, 162 Wis. 2d 246, 253, 469 N.W.2d 831, 833 (1991). Our inquiry is limited to whether: (1) the board kept within its jurisdiction; (2) the board proceeded on a correct theory of law; (3) the board's action was arbitrary, oppressive or unreasonable and represented its will and not its judgment; and (4) the evidence was such that the board might reasonably make the order or determination in question. *Id.* at 254, 469 N.W.2d at 834.

Finally, we note that sec. 33.25(4), Stats., provides that "[e]very petition is presumed to have been signed by the persons whose signatures appear thereon, until proved otherwise."

*Browndale Int'l v. Board of Adjustment*, 60 Wis. 2d 182, 197–99, 208 N.W.2d 121, 129 (1973), *cert. denied,* 416 U.S. 936 (1974).

## CHALLENGES TO THE PETITION

### 1. Verification

The appellants first argue that the statements of the owners who circulated the petitions were not verified as required by sec. 33.25(3), Stats.[5] Affixed to each petition was the following notarized statement by the owner/circulator:

> (Name), being duly sworn, states that he/she is the person described herein. This is to certify that the signatures on the petition attached hereto are true and correct to the best of his/her knowledge.

The appellants contend that this statement is merely a certification—not a verification as required by the statute.

The statutes do not specifically define or describe the concept or process of verification. However, the ordinary meaning of "verify" according to WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2543 (unabr. 1976) is "to confirm or substantiate in law by oath." BLACK'S LAW DICTIONARY 1561 (6th ed. 1990) offers a

---

[5] We open this discussion with an important qualification. The appellants' argument assumes that the verification requirement of sec. 33.25(3), Stats., speaks to the signatures on the petition. The respondents do not contend otherwise. Therefore, we address the issue on this premise.

We note, however, that the statute says that the petition must be verified. It does not expressly say the petition signatures must be verified. Section 33.25(2), Stats., sets out the substantive contents of the petition. These recitals do not include the signatures. Thus, it could be argued that the verification pertains to the substantive allegations of statements of the petition—not the petition signatures. However, since this issue is not raised by the respondents, we leave it for another case.

similar definition: "[t]o confirm or substantiate by oath or affidavit."

We conclude that the substantive words of the owners/circulators' statements meet the legal requirements for a verification. First, each statement recites that it is made under oath. Therefore, the fundamental ingredient which gives a verification its trust and credibility is satisfied. Second, each statement carries the jurat of a notary public, signifying that the "writing was sworn to by [the] person who signed it." *See id.* at 852 (definition of "jurat"). Third, every person giving such an oath is deemed to have been lawfully sworn. Section 887.03, Stats.

In reaching this conclusion, we reject the appellants' contention that because these verifications use the word "certify," they cannot qualify as a verification. This argument places form over substance. We also reject the appellants' contention that the verifications are deficient because they are given "to the best of [the circulator's] knowledge." Whether a verification says it or not, all verified statements (including testimony) are implicitly given with such qualification.[6] What is important is that, despite this qualification, the owners/circulators attested under oath to the statements.

### 2. *Withdrawal From the Petition*

The appellants next contend that forty-six signatories who sought to withdraw from the petition after the

---

[6] "Certainty generally is illusion. . . ." O. W. Holmes, Jr., *The Path of the Law*, in DICTIONARY OF QUOTATIONS 93 (1968). But in this world "[n]othing is certain but death and taxes." B. Franklin, *Letter to M. Leroy (1789)*, in DICTIONARY OF QUOTATIONS 93 (1968).

public hearing should have been permitted to do so and therefore should not have been counted as petitioners for the creation of the proposed district.

The appellants rely principally on an annexation case, *Town of Blooming Grove v. City of Madison*, 253 Wis. 215, 33 N.W.2d 312 (1948), where certain petitioners sought to withdraw from an annexation petition before the city council acted on the proposal. The statutes in effect at the time provided that upon receipt of a valid annexation petition and publication of the proposed annexation ordinance according to law, "[a]n ordinance annexing such territory . . . shall . . . be adopted at a regular meeting by three-fourths of all the members of the council." *Id.* at 217, 33 N.W.2d at 313. The supreme court ruled that the petitioners seeking to withdraw were entitled to do so prior to final action on the petition. *Id.* at 222, 33 N.W.2d at 316.

Standing alone, *Blooming Grove* supports the appellants' position. However, the respondents contend that a later case, *In re Racine Metropolitan Sewerage District*, 1 Wis. 2d 35, 83 N.W.2d 132 (1957), qualifies *Blooming Grove*. In *Racine Metropolitan*, the petitioners asked the county court to establish a metropolitan sewerage district. Notice of the hearing date and time was published according to law. On the date of the hearing and prior to the stated time, some of the petitioners filed a separate petition seeking to remove their names from the original petition. The trial court ruled that the withdrawal requests were timely filed. *Id.* at 35–36, 83 N.W.2d at 132–33.

The supreme court affirmed this ruling, but not under the *Blooming Grove* line of cases. Instead, the court analyzed the issue under a different line of cases which set out a stricter deadline for withdrawal from a petition. "[P]ersons signing a petition . . . which must

be filed on or before a certain date, cannot withdraw their signatures as a matter of right after the expiration of the time allowed for filing." *Id.* at 37, 83 N.W.2d at 133. The *Racine Metropolitan* court noted that the applicable statute provided that "[a]ny owner of real property . . . within the proposed district, wishing to object to the organization thereof shall, *on or before the date set for the hearing,* file his or their objections to the formation of such district." *Id.* at 39, 83 N.W.2d at 134 (emphasis added).

Against this case law, we now turn to this case. While the procedures governing the creation of an inland lake district in ch. 33, Stats., do not squarely fall under the relevant statutory procedures in either *Blooming Grove* or *Racine Metropolitan*, we see them as much closer to *Racine Metropolitan.*

First, the court hearing concerning the proposed creation of the sewerage district in *Racine Metropolitan* was much like the public hearing contemplated by sec. 33.26, Stats., in this case. Both forums afforded the interested parties an opportunity to air their support or grievances. In contrast, under the applicable statutes in *Blooming Grove,* the annexation proposal moved directly to the floor of the city council upon presentation of the petition and publication of the proposed ordinance without any opportunity for public input or hearing on the proposal. Under such constrained procedure, we think it understandable that the supreme court would allow for signatories to withdraw from the petition prior to the time final action was taken.

Here, as in *Racine Metropolitan,* all interested parties had a full and complete opportunity to voice their opposition or support regarding the proposed project. Thus, the principal concern which we see controlling in *Blooming Grove* is not present here.

515

Second, the applicable statutes in *Blooming Grove* did not prescribe any deadline for a hearing and the filing of objections. In *Racine Metropolitan* they did, and the supreme court attached significance to that fact:

> [The] statute provides that objectors to the organization of a metropolitan sewerage district shall "on or before the date set for the hearing" file his or their objections. In line with the *Cash* and *Tegt Cases, supra*, petitioners had a right to withdraw their signatures from the original petition at any time prior to the date and hour set for the hearing.

*Racine Metro.*, 1 Wis. 2d at 40, 83 N.W.2d at 134.

Here, sec. 33.26(1), Stats., prescribes a hearing date not later than thirty days from the date the petition is presented. The statute also sets out a procedure by which written objections may be filed before the hearing.[7] The statutory mechanism for registering objections is much like that in *Racine Metropolitan* and is totally different from those in *Blooming Grove*, where no opportunity for public objection existed.

Third, we consider the role of the committee on the question. The appellants argue that *Racine Metropolitan* should not govern this case because there the court hearing was the final action regarding the proposed sewerage district whereas here the public hearing before the committee was an interim proceeding. While this distinction is accurate, the appellants overlook the

---

[7] Section 33.26(1), Stats., allows for "objections, criticisms or suggestions" at the hearing. These, however, travel to "the necessity of the proposed district . . . and to the question of whether their property will be benefited by the establishment of such district." *Id.* These topics do not concern the validity of the signatures on the petition.

516

important and critical role which the committee plays in the proposed creation of an inland lake district.

Section 33.26(3), Stats., requires the committee to report to the county board following the public hearing. The statute does not detail exactly what the committee's report to the county board must address. However, we think it logical to conclude that the committee would report on those concerns raised at and prior to the public hearing, including any claims that the requisite number of signatories did not support the petition and the effect of some of the petitioners asking to withdraw from the petition. This conclusion is also supported by the further requirement in sec. 33.26(3) that before approving the creation of the district, the board must first be satisfied "that the petition is signed by the requisite owners as provided in s. 33.25." If the validity of the signatures on the petition is not timely raised, the committee will not, in most cases, be able to meaningfully report to the county board on this matter.

If we were to hold that signatories to the petition are permitted to withdraw after the public hearing, we would, in many cases, allow a petition to be voided *without the committee having any opportunity to address such objections.*[8] This would frustrate the role of the committee in this statutory process.

---

[8] Due to the unusual facts of this case in which the signature issue bounced back and forth between the committee and the county board, the committee did have an opportunity to address the matter in its report to the county board. However, the issue before us is a legal one of statutory construction—what is the deadline under the statute for withdrawal from a petition. The resolution of this legal question is not governed or influenced by the particular facts of a given case.

■

We therefore conclude, in accord with the rationale of *Racine Metropolitan*, that those petitioners who wished to withdraw from the petition were obligated to do so before the public hearing commenced.[9]

■

Besides being untimely, the petition withdrawal attempts suffer from another defect. Where a statute is silent regarding the right to add or withdraw signatures from a petition, "any counterpetition seeking to withdraw the signature of a signer . . . must meet the same formal verities required of the original petition." *In re Town of Spread Eagle*, 17 Wis. 2d 200, 208, 116 N.W.2d 165, 169 (1962).[10] Here, the requests for withdrawal were made by an unverified letter to the county clerk. Since the statute is silent regarding the right to withdraw, these attempts were not in accord with the procedure required by *Spread Eagle*.

---

[9] The appellants also contend that any reliance on *In re Racine Metropolitan Sewerage District*, 1 Wis. 2d 35, 83 N.W.2d 132 (1957), is improper because the supreme court decided in a later case that the statutes governing the creation of a sewerage district were an unconstitutional delegation of legislative authority to the judiciary. *See In re Fond du Lac Metro. Sewerage Dist.*, 42 Wis. 2d 323, 332–33, 166 N.W.2d 225, 229 (1969). However, the ruling in *Fond du Lac Metropolitan* had nothing to do with the *ratio decidendi* of the *Racine Metropolitan* decision. As the trial court correctly noted, "[*Fond du Lac Metropolitan*] does nothing to prohibit the Court from relying on the ruling in *Racine Metropolitan* regarding removal of names."

[10] The individual respondents and the district raise this issue in their brief. The appellants do not respond to this issue in their reply brief.

### 3.  Use of Tax Rolls to Determine "Owner"

When the county clerk and the corporation counsel investigated whether the signatories on the petition were landowners within the proposed district, they used a tax assessment roll dated September 30, 1991. In their brief-in-chief, the appellants contend that the use of this roll violated sec. 33.01(9)(am)1, Stats., which provides, *inter alia*, that an "owner" for purposes of a petition under ch. 33, Stats., is "[a] person whose name appears as an owner of real property on the tax roll . . . that was delivered . . . on or before the 3rd Monday in December of the previous year." Under this statute, the appellants contend that the county representatives were required to use the 1990, not the 1991, tax roll.

However, as the respondents correctly note, sec. 33.01(9)(am)1, Stats., did not become effective until August 15, 1991. The appellants concede this point in their reply brief. Nonetheless, they contend that because the county's investigation into the signatures did not occur until after the effective date of the new statute, the county representatives were obligated to use the 1990 tax roll pursuant to the new statute. We disagree.

The petitions were filed with the county clerk on July 1, 1991. From this we think it self-evident that the validity of the signatures must be measured by the law in effect at the time the signatures were made and tendered to the clerk. The statute in effect at the time the petitions were signed and tendered, sec. 33.01(9)(a), Stats. (1989–90), defined "owner" as follows, "For the purpose of petitioning and receiving notice under this chapter, the person whose name appears on the assessment roll prepared for purposes of real property taxation." Unlike the new statute, this

prior statute did not specifically instruct which assessment roll was to be used.

Given this ambiguity, we cannot say on this certiorari review that the county exceeded its jurisdiction, proceeded on an incorrect theory of the law, acted arbitrarily or unreasonably, or might not have reasonably made its determination that the requisite number of landowners had signed the petition. *See Arndorfer*, 162 Wis. 2d at 254, 469 N.W.2d at 834.

### 4.  Actions of the Town Clerk

Woven throughout the appellants' arguments are repeated challenges to certain determinations made by the town clerk regarding the validity of some of the petition signatures. In making this argument the appellants create—and then knock down—the proverbial strawman. What the appellants overlook is that the statutory scheme for a county board's creation of an inland lake district does not involve a town clerk in determining the validity of the petition signatures.

In short, the actions and conclusions of the town clerk in this case are irrelevant. It is the county board's determinations which are important under the statute and it is those determinations which are subject to judicial review.

### 5.  Undated Signatures

The appellants contend that twenty-one petition signatures should be disqualified because they are undated. However, the statutes do not require a petition signature to be dated. The only statutory

520

requirement is that a signatory be a landowner within the proposed district. Section 33.25(1), Stats.

### 6. Miscellaneous Challenges

The appellants also contend that thirty other signatures should be disqualified on a variety of grounds. As we have already noted, the county concedes the invalidity of nineteen of these signatures. As to the remaining eleven signatures, the respondents concede some of these challenges and dispute others. We do not address this issue on the merits because, even if we disqualified the signatures, the remaining number of valid signatures still satisfies the statutory requirement of 51% of the landowners within the proposed district.

## ADDITIONAL EVIDENCE IN THE CIRCUIT COURT

The appellants argue that the trial court erred by refusing to take additional evidence in the circuit court judicial review proceedings. However, review on statutory certiorari is restricted to the record made before the initial fact finder, *unless the statute enlarges the scope of review. State ex rel. Hemker v. Huggett,* 114 Wis. 2d 320, 323, 338 N.W.2d 335, 336 (Ct. App. 1983). Section 33.26(7), Stats., does not allow the circuit court to take additional evidence.

Moreover, even if the circuit court had discretion to take additional evidence, we would reject the appellants' argument. A court may, in its discretion, take additional evidence in a certiorari proceeding when such is necessary to the "proper disposition of the matter." *Klinger v. Oneida County,* 149 Wis. 2d 838, 846,

440 N.W.2d 348, 351 (1989).[11] Such necessity may exist where: (1) the record before the board is incomplete because the aggrieved party was refused an opportunity to be fully heard or the board has excluded relevant evidence, (2) when good and sufficient cause is shown for the failure to have offered evidence to the board, (3) when the record presented to the circuit court does not contain all the evidence actually presented to the board, (4) when the board's record fails to present the hearing in sufficient scope to determine the merits of the appeal, and (5) when new evidence is discovered after the board's proceedings were closed. *Id.* at 847, 440 N.W.2d at 351–52.

In support of their argument for the taking of additional evidence, the appellants revisit their claim that certain of the petitioners should have been permitted to withdraw from the petitions after the public hearing. They contend that further evidence would demonstrate why, in fairness, these petitioners should have been permitted this luxury. However, the issue before the circuit court was a legal one of statutory construction—the statutory deadline for withdrawal from a petition. The legislative intent, not the reasons why some petitioners wanted to withdraw from the petition, controlled this question. The resolution of this legal question could not have been governed or influenced by additional evidence.

The appellants also contend that further evidence would have addressed the town clerk's role in this matter. But as we have already ruled, the town clerk has no role in the creation of an inland lake district.

---

[11] In *Klinger,* however, the statute expressly authorized the circuit court to take additional evidence. *Klinger v. Oneida County,* 149 Wis. 2d 838, 846, 440 N.W.2d 348, 351 (1989).

The appellants also wanted to present evidence explaining why the committee recommended against creation of the district. However, the committee's report to the county board and the minutes of various meetings were already before the circuit court in this case. The court well knew that the committee initially recommended against creation of the district because of its reservations regarding some of the signatures supporting the petition.

In summary, we see no misuse of discretion by the circuit court in declining the appellants' request to present additional evidence.

## INTERVENTION

The appellants contend that the circuit court erred by allowing the individual respondents and the Lake Keesus Management District to intervene in the judicial review proceedings in the circuit court. However, the appellants have failed to provide us with a transcript of the hearing on this motion which presumably also contains the trial court's rationale in support of its decision to allow the intervention. When we are not provided with the trial court's decision, we limit the scope of our appellate review to the record before us. *Duhame v. Duhame*, 154 Wis. 2d 258, 269, 453 N.W.2d 149, 153 (Ct. App. 1989). We also assume that every fact essential to sustain the trial court's exercise of discretion is supported by the record. *Id.*

In some instances, a request for intervention is addressed to the trial court's discretion. Section 803.09(2), Stats.; *see also Kornitz v. Commonwealth Land Title Ins. Co.*, 81 Wis. 2d 322, 332–33, 260

N.W.2d 680, 686 (1978).[12] Without a transcript, we assume the trial court correctly exercised its discretion on the intervention request.

## CONCLUSION

Like the circuit court, we reject all of the appellants' challenges to the petition. [13] We affirm the county board's creation of the Lake Keesus Management District. We also affirm the circuit court's order dismissing the appellants' petition for judicial review.

*By the Court.*—Order affirmed.

---

[12] Where joinder is asserted as a matter of right pursuant to sec. 803.09(1), Stats., the question is one of law which we review *de novo. State ex rel. Bilder v. Township of Delavan,* 112 Wis. 2d 539, 549, 334 N.W.2d 252, 258 (1983). However, we are not able to determine from the limited record provided by the appellants on this issue whether the request for intervention was made under subsec. (1) of sec. 803.09. We therefore chose to consider the intervention request as one addressed to the trial court's discretion under subsec. (2) of sec. 803.09.

[13] The appellants also challenge the trial court's refusal to enjoin the district from performing its duties pending this appeal. Since we have upheld the county board's creation of the district, we deem the issue moot.