**WISCONSIN DEPARTMENT OF HEALTH AND SOCIAL SERVICES, in its own right and as the representative of a class similarly situated, and so numerous that the joinder of all class members is impractical, Plaintiff,**

**v.**

**UPHOLSTERERS INTERNATIONAL UNION HEALTH AND WELFARE FUND, Defendant.**

**No. 87–C–387–C.**

United States District Court, W.D. Wisconsin.

June 6, 1988.

E. Gordon Young, Asst. Atty. Gen., Madison, Wis., for plaintiff.

Dean M. Horwitz, Previant, Goldberg, Uelmen, Gratz, Miller & Brueggeman, Milwaukee, Wis., for defendant.

## ORDER

CRABB, Chief Judge.

This is a civil action for monetary and declaratory relief in which plaintiff seeks reimbursement for benefits paid to members of defendant's health and benefit plan who are also eligible to receive medical benefits under plaintiff's Medicaid program. Defendant denies that it has any liability to plaintiff for reimbursement of health insurance benefits. It contends that the Employee Retirement Income Security Act (ERISA) preempts the state law on which plaintiff relies in seeking reimbursement. Both parties contend that there is a potential conflict between federal Medicaid laws and ERISA. Jurisdiction is present under 28 U.S.C. § 1331 and 29 U.S.C. § 1132(a)(1)(B).[1] Now before the court are plaintiff's motion for class certification and the parties' cross motions for summary judgment.

Plaintiff's motion for class certification will be denied because plaintiff has failed to show that the proposed class meets the

---

1. Plaintiff asserts that jurisdiction is based both on diversity and on a federal question. I find that federal question, not diversity, jurisdiction is present because plaintiff's sole cause of action arises under a federal statute, 29 U.S.C. § 1132(a)(1)(B). *See* the discussion in Part I of this opinion.

prerequisites for a certification. Defendant's motion for summary judgment will be granted, because I find that defendant's coordination of benefits provision was valid during the period for which plaintiff seeks reimbursement.

Based on the parties' proposed findings and for purposes only of deciding this motion, I find that there is no genuine issue as to the following material facts.

## FACTS

Defendant is an employer-funded, self-insured health and welfare benefit plan that provides medical benefits for qualified members of the Upholsterers International Union. Defendant is an entity with power to sue and be sued. It is a corporation foreign to the State of Wisconsin. At all material times, defendant's health care plan contained a coordination of benefits provision that made defendant a secondary payer to other sources of coverage such as Medicaid.

Plaintiff is the single state agency designated to administer the Medicaid program under the Social Security Act.

The State of Wisconsin has developed the following procedure for the payment of Medicaid benefits: At the time of his or her initial application for Medicaid benefits, a claimant is obligated to inform the County Department of Social Services or the Social Security Administration whether other health insurance exists, and to cooperate to the extent that the other insurance benefits can be utilized. This cooperation includes assigning benefits to a provider of service and turning insurance payments over to the state. Once the recipient reports insurance coverage to the certifying agency, the agency puts identifying information in the recipient's computerized eligibility file. The identifying information causes three things to occur: 1) an insurance indicator printed out on the recipient's identification card notifies the health service provider that other insurance exists; 2) the state computer system will deny certain types of claims with a code which tells the health service provider to bill other insurance first (this is called cost avoidance and is utilized with services that are usually covered by insurance and not subject to deductibles or coinsurance); 3) claims which the state will pay prior to billing other insurance go into a pending file for post-payment recovery billing. When the certifying agency submits a form to the state fiscal agency with the insurance information, the information necessary for post-payment recovery billing is complete. The state seeks reimbursement from the insurance carrier for state expenses paid on behalf of the insured person.

In some cases, strict compliance with cost avoidance procedures is impractical, and plaintiff will prepay the health service provider and then seek recapture from the third party.

From June 1, 1981 through April 30, 1987, plaintiff made payments in the amount of $159,020.50 to certain health care providers for 2,286 claims made by individuals eligible to receive Medicaid who were allegedly also covered under defendant's plan at the time the claims arose.[2] Plaintiff demanded reimbursement from defendant for these payments, but defendant has refused to reimburse plaintiff.

April 1, 1989 is the termination date of the last of the collective bargaining agreements under which defendant fund was maintained. This agreement was in effect on April 7, 1986.

The Health Care Financing Administration of the United States Department of Health and Human Services did not penalize the State of Wisconsin or deny it feder-

---

2. Defendant proposed a finding to the effect that plaintiff made payments on behalf of 2,286 eligible Medicaid claimants. Plaintiff does not dispute this fact. However, plaintiff proposed a finding of fact that its expenditures during the period in question covered 2,286 *claims*, rather than claimants, a fact undisputed by defendant.

Plaintiff lists only 253 members of defendant's plan who are also eligible to receive Medicaid in Wisconsin. Presumably, these individuals could have generated multiple claims. I have accepted plaintiff's proposed finding of fact as the more probable.

al Medicaid funds at any time material to this action.[3]

## OPINION

### I. The Source of Plaintiff's Cause of Action

■ In order to focus properly on the central issues of this case, it is important to identify whether the source of plaintiff's cause of action is state or federal law. Defendant's preemption argument makes sense only if plaintiff's action is based on state law, because ERISA's preemption statute is directed at state regulation of pension and disability plans.[4] Given the complicated interplay of federal and state Medicaid statutes, it is not the easiest of tasks to identify the source of plaintiff's cause of action, especially when, as here, the plaintiff presents a tangle of arguments based on state and federal law and relies on the court to unravel it.

Plaintiff contends that several state statutes provide for the assignment to it of insurance and disability benefits, and that defendant fund members who are also Wisconsin Medicaid recipients assigned plaintiff their rights to benefits under defendant's plan pursuant to these statutes.[5] Plaintiff appears to draw the conclusion that the present action is a claim brought under the Wisconsin assignment statutes. Alternatively, plaintiff cites as a basis for this suit 29 U.S.C. § 1132(a)(1)(B), the civil enforcement provision of ERISA, as well as federal statutes and regulations requiring states to require an assignment of disability benefits.[6] I conclude that in the absence of an assignment of their benefits and defendant's coordination of benefits provision, members of the defendant fund would have had a cause of action under 29 U.S.C. § 1132(a)(1)(B), and therefore that plain-

---

**3.** Plaintiff disputes this finding by asserting that "continuing liability exists." Plaintiff does not explain how this assertion puts defendant's proposed finding into dispute, or point to any factual support for the assertion.

**4.** 29 U.S.C. § 1144(a) provides that "the provisions of this subchapter and subchapter III of this subchapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title."

**5.** These statutes provide:
§ 49.65 Third party liability
(1) Subrogation. The department, county or elected tribal governing body providing any public assistance under this chapter as a result of the occurrence of an injury, sickness or death which creates a claim or cause of action, whether in tort or contrast, on the part of a public assistance recipient or beneficiary or the estate of a recipient or beneficiary against a 3rd party, including an insurer, is subrogated to the rights of the recipient, beneficiary or estate and may make a claim or maintain an action or intervene in a claim or action by the recipient, beneficiary or estate against the 3rd party.
(2) Assignment of actions. The department, county or elected tribal governing body providing any public assistance authorized under this chapter, including medical assistance, as a result of the occurrence of injury, sickness or death which results in a possible recovery of indemnity from a 3rd party, including an insurer, *may* require an assignment from the applicant, recipient or beneficiary of such public assistance or legally ap-

pointed representative of the incompetent or deceased applicant, recipient or beneficiary giving it the right to make a claim against the 3rd party. (Emphasis added)
49.45(19) Establishing paternity and assigning support rights. (a) As a condition of eligibility for medical assistance, any person charged with the care and custody of a dependent child or children shall:
2. Notwithstanding other provisions of the statutes, be deemed to have assigned to the state, by applying for or receiving medical assistance, any rights to medical support or other payment of medical expenses from any other person that the parent and the dependent child or children may have, including rights to unpaid amounts accrued at the time of application for medical assistance as well as any rights to support accruing during the time for which medical assistance is paid.
632.72 Medical assistance; assignment
The providing of medical benefits under s. 49.02, 49.03 or 49.046 or of medical assistance under s. 49.45, 49.46 or 49.47 *constitutes* an assignment to the department of health and social services or the county or municipality providing the medical benefits or assistance. The assignment shall be, to the extent of the medical benefits or assistance provided, for benefits to which the recipient would be entitled under any policy of health and disability insurance. (Emphasis added)

**6.** Section 1132(a)(1)(B) provides that a civil action may be brought "by a participant or beneficiary—(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of his plan, or to clarify his rights to future benefits under the terms of the plan...."

tiff's cause of action is based also on 29 U.S.C. § 1132(a)(1)(B).

The parties do not dispute that defendant's plan is regulated by ERISA.[7] 29 U.S.C. § 1132(a)(1)(B) is the exclusive legal basis for the civil enforcement of ERISA provisions. *Metropolitan Life Insurance Co. v. Taylor*, —— U.S. ——, 107 S.Ct. 1542, 1546, 95 L.Ed.2d 55 (1987); *D'Onofrio v. Travelers Insurance Co.*, 662 F.Supp. 872 (E.D.Ark.1987). If a member of the defendant fund had made a claim for benefits and defendant had refused to pay the benefits, the member would have had a cause of action under 29 U.S.C. § 1132(a)(1)(B). By assigning to plaintiff their right to benefits under defendant's plan, the members of the plan who are also Medicaid recipients have assigned any potential claim they might have under the plan, nothing more and nothing less.

As a general rule, a valid and unqualified assignment operates to transfer to the assignee all the right, title, or interest of the assignor in the thing assigned, but not to confer upon the assignee any greater right or interest than that possessed by the assignor. It passes the whole right of the assignor, nothing remaining in him capable of being assigned, and the assignor has no further interest in the subject matter of the assignment.

**7.** Plaintiff moved for summary judgment but reserved its right to discover whether defendant was an ERISA-regulated plan in fact. However, in its subsequent response to defendant's proposed findings of fact, plaintiff did not dispute the finding that defendant is an ERISA plan.

**8.** Part III discusses the question whether assignees of ERISA disability plan benefits are included in the "participants or beneficiaries" language of § 1132(a)(1)(B). In other words, the issue of standing is not entirely resolved by the state statutes that authorize plaintiff to require an assignment of disability benefits.

**9.** In *Gully v. First National Bank in Meridian*, 299 U.S. 109, 116, 57 S.Ct. 96, 99, 81 L.Ed. 70 (1936), Justice Cardozo noted that "because permission at times is preliminary to action, the two are [not] to be classed as one." In *Gully* the question was whether a claim had "arisen under" the laws of the United States for purposes of federal question jurisdiction. The plaintiff argued that because federal law permitted the taxation of shares in national banks, its suit to recover taxes was brought under federal law,

*Kornitz v. Commonwealth Land Title Insurance Co.*, 81 Wis.2d 322, 327, 260 N.W. 2d 680 (1978) (quoting *Tullgren v. School District*, 16 Wis.2d 135, 142, 113 N.W.2d 540 (1962) (quoting in turn 6 C.J.S. Assignments § 82 at 1136, now 6A C.J.S. Assignments § 73 at 710–12))

Plaintiff confuses the mechanism by which it acquired the right to benefits under defendant's plan with the mechanism for enforcing that right. The confusion is understandable: but for a state statute, plaintiff would not have acquired a federally enforceable right. Nevertheless, the relevant assignment statutes do not themselves provide a cause of action. They merely confer upon plaintiff the cause of action that would have been available to the members of defendant's plan under 29 U.S.C. § 1132(a)(1)(B)[8] had defendant breached its obligations to them under the plan.[9] *Misic v. Building Service Employees Health and Welfare Trust*, 789 F.2d 1374, 1377 (9th Cir.1986) (claim by provider of medical services who is assignee of ERISA health and welfare benefits asserts a cause of action under § 1132(a)(1)(B), not one under state law).[10]

**II. Plaintiff's Motion for Class Certification**

■ In an order entered April 27, 1988, I stayed a decision on plaintiff's motion for

although the tax was imposed under the authority of a Mississippi statute. Justice Cardozo posed the following hypothetical:

> Let us suppose an amendment of the Constitution by which the states are left at liberty to levy taxes on the income derived from federal securities, or to lay imposts and duties at their pleasure upon imports and exports. If such an amendment were adopted, a suit to recover taxes or duties imposed by the state law would not be one arising under the Constitution of the United States, though in the absence of the amendment the duty or the tax would fail.

*Id.* This case presents nearly the reverse of Justice Cardozo's hypothetical. In the absence of Wisconsin's assignment statutes, plaintiff's suit would fail for lack of standing. But this does not mean that plaintiff's suit "arises under" state law.

**10.** *Misic* did not concern a statutory assignment of health and welfare benefits.

class certification in order to give plaintiff the opportunity to explain in greater detail the basis for its motion. Plaintiff's brief response did not provide this detail. I find that plaintiff has failed to define an existing class, and I will deny its motion.

Rule 23(a) provides that a class may be certified only if:

(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Before a plaintiff can prove that it meets the criteria of Rule 23(a), however, it must be able to show that a class exists. *John Does 1–100 v. Boyd*, 613 F.Supp. 1514, 1527 (D.Minn.1985).

■ Plaintiff defines its class as 253 current or prior members of defendant's plan and their dependents who are citizens of the State of Wisconsin, who are eligible for Medicaid benefits, and for whom plaintiff paid medical expenses during the period 1981–1987. Wisconsin Statutes § 632.72, the statute requiring Medicaid recipients to assign to the state Medicaid agency their rights to benefits under other insurance plans, became law in 1977, some years before the period for which plaintiff seeks reimbursement. Thus, all proposed class members have assigned to plaintiff their rights to benefits under defendant's plan. They no longer have any interest which

would entitle them to bring a suit under 29 U.S.C. § 1132(a)(1)(B). Because plaintiff has failed to satisfy the threshold requirement that a potential class exist, it is unnecessary to reach the question whether plaintiff's class meets the criteria of Rule 23(a).[11]

### III. Standing

■ One of defendant's principal defenses to this suit is the argument that ERISA preempts the state assignment laws that allow plaintiff to sue defendant for reimbursement of medical expenses plaintiff paid to members of defendant's plan. I have already found that plaintiff's suit does not arise under the state assignment statute, but rather under § 1132(a)(1)(B). Therefore, the question of preemption does not arise.

Defendant contends also that ERISA benefits may not be assigned, and that even if they may, plaintiff does not have standing to bring this suit. I turn next to these issues.

■ Defendant argues that 29 U.S.C. § 1056(d)(1) forbids the assignment of ERISA plan benefits. That provision states that "[e]ach pension plan shall provide that benefits provided under the plan may not be assigned or alienated." In *Misic v. Building Service Employees Health and Welfare Trust*, 789 F.2d at 1376–1377, the court noted that the plain language of § 1056(d) refers only to pension benefits. Furthermore, neither the specific purpose of the anti-assignment provision nor the general goal of the statute

---

11. In its Brief in Reply to Defendant's Brief in Opposition to Plaintiff's Motion for an Order for Class Certification, plaintiff cites the following state statutes and regulations as support for its motion for class certification: Wis.Stats. § 49.45(1), (2)(a) 9, 10; Wis.Adm.Code § HSS 106.04(7). Plaintiff appears to argue that these statutes make the members of the proposed class liable to plaintiff if plaintiff fails to recapture from defendant expenses paid on behalf of the class members. However, the statutes cited by plaintiff are irrelevant to the issue of class certification. They concern the state's authority to recover overpayments from *providers* of health care to Medicaid recipients. Plaintiff cites also Wis.Stats. § 49.47(4), (5), which concerns the determination of eligibility for

Medicaid. Section 49.47(5) authorizes the Department of Health and Social Services to investigate the financial circumstances of a Medicaid recipient where the department has reason to believe that the recipient may no longer be eligible for Medicaid. None of these statutes indicates that plaintiff's proposed class members have any interest in plaintiff's suit. Nor does plaintiff's citation to Wis.Stats. § 803.03(2), the state joinder statute, have any relevance to a motion for class certification in a federal suit. Even if jurisdiction in this case were based on diversity rather than on a federal question under 29 U.S.C. § 1132(a)(1)(B), the Federal Rules of Civil Procedure would apply. *See In re Agent Orange Product Liability Litigation*, 580 F.Supp. 690, 695 (E.D.N.Y.1984).

would be served by prohibiting the assignment of health and disability benefits to providers of health care. *Id.* at 1377. As the court noted, "[h]ealth and welfare benefit trust funds are designed to finance health care [and] [a]ssignment of trust monies to health care providers results in precisely the benefit the trust is designed to provide and the statute is designed to protect." *Id.* at 1377. The analysis in *Misic* applies to this case: assignment of benefits due under other insurance plans aids the state and federal governments in financing the health care those plans and Medicaid are meant to provide. I conclude that 29 U.S.C. § 1056(d) does not apply to the assignment of medical and disability benefits.

■ Defendant argues next that the language of § 1132(a)(1)(B) does not apply to assignees of ERISA benefits. Section 1132(a)(1)(B) provides that a civil action may be brought "by a participant or beneficiary—(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan...." Some courts have construed this provision narrowly to mean that assignees of ERISA benefits are not "participants or beneficiaries." *See, e.g., Northeast Department ILGWU v. Teamsters Local Union No. 229,* 764 F.2d 147, 154 n. 6 (3rd Cir.1985) ("Congress simply made no provision in § 1132(a)(1)(B) for persons other than participants and beneficiaries to sue, including persons purporting to sue on their behalf"). In *Misic,* the court rejected this narrow construction, relying on the common law of assignment, which holds that a valid assignment confers upon the assignee standing to sue in place of the assignor. *Misic,* 789 F.2d at 1378.

In this case, there is yet another reason to reject a narrow construction of the language of § 1132(a)(1)(B). In 1984, Congress enacted a provision requiring states to require the assignment of health and disability benefits as a condition of Medicaid eligibility. *See* 42 U.S.C. §§ 1396a(a)(45), 1396k(a)(1)(A); 42 C.F.R. § 433.146. States that fail to require as-

signment may become ineligible for federal funding. When it enacted 42 U.S.C. § 1396a(a)(45), Congress must have realized that many, if not most, assignments of benefits would concern benefits under ERISA-regulated plans. The narrow construction of § 1132(a)(1)(B) adopted by the Court of Appeals for the Third Circuit and urged by defendant would frustrate the Congressional purpose in enacting § 1396a(a)(45) and violate the ordinary rules of statutory construction. I conclude that plaintiff has standing to bring this suit.

## IV. The Coordination of Benefits Provision

■ Defendant argues that a provision in its plan makes it a secondary payer of health benefits to plaintiff. This provision states:

"COORDINATION"—Means that if the employee or the employee's dependent are [sic] entitled to benefits under any other Plan that will pay part or all of the expense incurred for medical services and supplies for treatment of an illness or injury, the amount of medical expense benefits paid will not total more than 100% of the incurred expense.

When an eligible employee or eligible dependent is covered under more than one Plan, the order in which benefits are determined is as follows:

1. A Plan that does not have a coordination provision or similar non-duplication of medical expense benefits provision pays its benefits before this Plan.

[ ... ]

The term "Plan" includes the benefits payable under this Plan and any other plan providing benefits or services for or by reason of medical care or treatment under an insurance policy, *any governmental programs* or coverage provided under hospital or medical service Plans....

(Emphasis added) Plaintiff argues that federal and state laws require individuals to exhaust other sources of coverage before they may become entitled to receive Medicaid benefits. If the state Medicaid

agency pays medical expenses before payment has been sought from third-party insurers, federal law requires the agency to seek reimbursement from the third parties. In short, federal and state law mandate that Medicaid be the secondary payer. According to plaintiff, Medicaid law overrides defendant's coordination of benefits provision.[12] I conclude that defendant's provision was valid for the period for which plaintiff seeks reimbursement and that it made defendant a secondary payer to Medicaid.

During the period for which plaintiff seeks reimbursement a potential conflict existed between federal Medicaid requirements implemented by the states and provisions of ERISA that exempted self-insured ERISA plans from state regulation. ERISA does not prohibit the inclusion of coordination of benefits provisions in ERISA-regulated plans. *See ERISA Plans Making Medicaid Primary Payer*, GAO Report to the President of the Senate and the Speaker of the House of Representatives, [1984–2 Transfer Binder] Medicare &

Medicaid Guide (CCH) ¶ 34,257 (Nov. 30, 1984). Until recently, state statutes that attempted to prohibit such provisions in a self-insured ERISA plan such as defendant's would have been preempted under 29 U.S.C. § 1144(a). *See Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96–97, 103 S.Ct. 2890, 2899, 77 L.Ed.2d 490 (1983) (state law relates to an employee benefit plan—and thus is preempted by ERISA if not saved by 29 U.S.C. § 1144(b)(2)(A)—"if it has a connection with or reference to such a plan"); *Metropolitan Life Insurance Co. v. Massachusetts*, 471 U.S. 724, 747, 105 S.Ct. 2380, 2393, 85 L.Ed.2d 728 (1985) (under the "deemer clause," 29 U.S.C. § 1144(b)(2)(B), self-insured employee benefit plans are not subject even to indirect regulation by the states). Yet states may be ineligible for federal funding if they fail to comply with the federal requirements that make Medicaid a secondary payer. Thus, one body of federal law, ERISA, threatened the efficient administration of another body of federal law, Medicaid.[13]

Congress recognized this dilemma in 1986, when it amended ERISA's preemp-

---

**12.** Plaintiff appears to argue also that state laws requiring potential Medicaid recipients to use other coverage before they apply for Medicaid benefits amount to coordination of benefits provisions. If plaintiff is correct, it would be necessary to refer to the terms of defendant's plan, which sets forth rules for determining which of two coordination provisions—defendant's or another plan's—will take precedence over the other. However, as defendant notes, the exhaustion provisions cited by plaintiff concern the initial determination of eligibility for Medicaid benefits. They do not apply to situations where, as here, state Medicaid agencies have *already* paid claims and are seeking reimbursement from third parties. The point of coordination of benefits provisions is to relieve a health insurance plan from the responsibility of paying medical expenses in the first instance.

Plaintiff refers also to the affidavit of Patricia McCollum submitted in support of its motion for summary judgment. McCollum's affidavit incorporates sections of the Wisconsin Medical Assistance Provider Handbook. Under the heading "Third Party Liability," the Handbook states that the Medical Assistance Program is the "payer of last resort for any service covered by the program." Although this provision resembles defendant's coordination of benefits provision, it appears in an internal manual used by plaintiff's employees, rather than in a publication that explains the terms of insurance cov-

erage to the insured. In the latter case, the terms spelled out in the publication could have a legally binding effect on the insurer, at least if there existed no other, more formal document setting forth the same or other terms. Internal manuals like plaintiff's handbook are not legally binding. *See Schweiker v. Hansen*, 450 U.S. 785, 789, 101 S.Ct. 1468, 1471, 67 L.Ed.2d 685 (1981) (Social Security Claims Manual used only by SSA employees has no legal force). Plaintiff has not challenged the legal force of the publication containing defendant's coordination of benefits provision, a copy of which defendant submitted in support of its motion for summary judgment, and therefore I assume that defendant's provision is binding. Thus, plaintiff has pointed to nothing resembling a coordination of benefits provision that would give rise to a "war of provisions."

**13.** The GAO report cited above noted that "[s]tates administer Medicaid and also regulate most private health insurance plans ... ERISA, however, is federally administered, and insurance plans operating under it are exempt from state regulation." In other words, even though federal law requires states to administer Medicaid in a certain manner, the administration is effected through state law, which is preempted by ERISA insofar as it seeks to regulate ERISA plans. Thus, plaintiff is incorrect if it seeks to argue that federal Medicaid law overrides defendant's coordination provision.

tion provisions to allow states to prohibit coordination of benefits provisions in self-insured ERISA-regulated plans. 29 U.S.C. § 1144(b)(8) provides:

> Subsection (a) [preempting state laws that relate to ERISA plans] of this section shall not apply to any State law mandating that an employee benefit plan not include any provision which has the effect of limiting or excluding coverage or payment for any health care for an individual who would otherwise be covered or entitled to benefits or services under the terms of the employee benefit plan, because that individual is provided, or is eligible for, benefits or services pursuant to a plan under title XIX of the Social Security Act [42 U.S.C.A. § 1396 et seq.], to the extent such law is necessary for the State to be eligible to receive reimbursement under title XIX of that Act.

Wisconsin enacted such a law in 1985. Wis.Stats. § 632.755(2) provides that "[b]enefits provided by a disability insurance policy shall be primary to those benefits provided under ch. 49." Prior to the effective date of 29 U.S.C. § 1144(b)(8), this law could have applied only to private, non-ERISA insurers, or else to ERISA plans insured by private insurers, *see Metropolitan Life Insurance Co. v. Massachusetts,* 471 U.S. at 747, 105 S.Ct. at 2393. But it is clear that as of the effective date of § 1144(b)(8), § 632.755(2) may apply to coordination provisions in self-insured ERISA plans without being subject to preemption.

Defendant concedes that its provision would be invalid under § 632.755(2) but argues that in its case, the effective date of 29 U.S.C. § 1144(b)(8) is April 1, 1989. Section 9503(d)(2) of Public Law 99–272, the law containing § 1144(b)(8), states:

> (A) Except as provided in subparagraph (B), the amendment made by [§ 1144(b)(8)] shall become effective on October 1, 1986.
>
> (B) In the case of a plan maintained pursuant to one or more collective bargaining agreements between employee representatives and one or more employers ratified on or before the date of the enactment of this Act [April 7, 1986], the amendment made by [§ 1144(b)(8)] shall become effective on the later of—
>
> (i) October 1, 1986; or
>
> (ii) the earlier of—
>
> (I) the date on which the last of the collective bargaining agreements under which the plan is maintained, which were in effect on the date of the enactment of this Act, terminates . . .; or
>
> (II) three years after the date of the enactment of this Act.

Act of April 7, 1986, Pub.L. No. 99–272, 1986 U.S.Code Cong. & Admin.News (100 Stat.) 207.

I have found that April 1, 1989 is the termination date of the last of the collective bargaining agreements under which defendant fund was maintained. This agreement was in effect on April 7, 1986. Therefore, April 1, 1989 is the effective date of 29 U.S.C. § 1144(b)(8), which authorizes state statutes like § 632.755(2) to prohibit coordination of benefits provisions in self-insured ERISA plans. Plaintiff seeks reimbursement for the period 1981–1987. During this time, defendant's coordination of benefits provision was still valid under ERISA's preemption statute. Thus, defendant was entitled to make its plan secondary payer to Medicaid. If members of defendant fund had made claims on defendant before making claims for Medicaid benefits, defendant could have refused payment. The plan members would not have had a cause of action under 29 U.S.C. § 1132(a)(1)(B) because ERISA law did not prohibit coordination provisions. Thus, as assignee of the rights of defendant's plan members, plaintiff has no cause of action and is not entitled to sue defendant for reimbursement. Defendant's motion for summary judgment will be granted.

### ORDER

IT IS ORDERED that plaintiff's motion for summary judgment is DENIED and that defendant's motion for summary judgment is GRANTED.