695 F.Supp. 181 (1988)
NATIONWIDE MUTUAL INSURANCE COMPANY
v.
TEAMSTERS HEALTH AND WELFARE FUND OF PHILADELPHIA AND VICINITY.
Civ. A. No. 85-5270.
United States District Court, E.D. Pennsylvania.
September 12, 1988.
*182 Joel D. Smith, Flanagan & Smith, Lancaster, Pa., for plaintiff.
William J. Einhorn, Sagot & Jennings, Philadelphia, Pa., for defendant.

MEMORANDUM
LUDWIG, District Judge.
The parties waived their right to trial and agreed to have this action disposed of on stipulated facts.

I.
Plaintiff Nationwide Mutual Insurance Company is an Ohio corporation licensed to do business in Pennsylvania. Defendant Teamsters Health and Welfare Fund of Philadelphia and Vicinity is a trust fund established June 1, 1965 to provide health *183 and medical benefits to eligible participants and dependents. The Fund's sole office is located in Philadelphia.
In August, 1980 Dominic Zaccardi obtained automobile insurance from Nationwide. He elected to have personal injury protection provided through the Fund. This election was made under section 203 of Pennsylvania's then No-Fault Motor Vehicle Insurance Act:
The owner or operator of a motor vehicle may elect to provide for security in whole or in part for the payment of basic loss benefits through a program, group, contract or other arrangement that would pay to or on behalf of the victim ... [required benefits]. In all such instances, each contract of insurance issued by an insurer shall be construed to contain a provision that all basic loss benefits provided therein shall be in excess of any valid and collectible benefits otherwise provided through such program, group, contract or other arrangement as designated at the election of the owner or operator which shall be primary.
40 Pa. S.A. § 1009.203 (repealed). As a result, Zaccardi received a reduction in his automobile insurance policy premium. In August, 1982 the insurance policy was renewed.
The Fund was established in 1965 by an agreement and declaration of trust among several local unions associated with the International Brotherhood of Teamsters and various employers. It is an "employee welfare benefit plan" within the meaning of section 3(1) of the Employee Retirement Income Security Act of 1974, 29 U.S.C.A. § 1002(1). Under § 302 of the Labor Management Relations Act of 1947, 29 U.S. C.A. § 186, the Fund is administered by an equal number of union-designated and employer-designated trustees. Its primary source of income is monthly employer contributions made pursuant to collective bargaining agreements. It covers more than 12,000 employee beneficiaries.
Zaccardi's participation in the Fund began shortly after he was employed by Norristown Wholesale, Inc., a party to a collective bargaining agreement with Teamsters Local Union 929. Zaccardi was eligible for Fund benefits from December 1, 1982 until January 31, 1985. Coverage under the Fund is on an expense-incurred basis.
On October 11, 1982 the Fund adopted an amendment specifically intended to make it secondary to automobile insurance.

Coordination of Benefits: The Teamsters Health and Welfare Fund provides for a Coordination of Benefits Provision. This means that all benefit payments are "coordinated" with the benefit payments from any other plans under which a family member is covered, so that the total benefits payable under all such plans shall not exceed 100% of the allowable expenses. This provision will not apply to other group or individual insurance policies which require that you pay the entire premium.
On January 6, 1983 the Fund notified its participants:
For the record, the Fund considers itself secondary to your No-Fault Auto Insurance. In other words, if after your auto insurance has paid your medical bills you still have medical expenses which were unpaid, the Fund will pay the remaining covered expenses. Between both coverages, generally 100% of your medical expenses will be covered. Your Fund is not an insurance carrier within the meaning of the State Insurance Code and on that basis is not subject to the State's No-Fault regulations.
On December 3, 1982, subsequent to the adoption of the amendment but before the notification, Zaccardi was involved in an automobile accident in which he sustained multiple injuries. Initially, he submitted claims for medical expenses to both Nationwide and the Fund. The Fund advised Zaccardi and Nationwide of the October 11, 1982 amendment and declined to make payment pending the action of the no-fault carrier. The Fund was unaware that Zaccardi had made a collateral benefits election in his Nationwide policy. Nationwide did not learn of the October 11, 1982 amendment until it was notified of the Fund's rejection of Zaccardi's claim.
*184 When the Fund refused to pay, Nationwide, pursuant to the No-Fault Act, became obligated to do so. It paid $71,220 for Zaccardi's medical expenses and $15,000 for wage loss from March 10, 1983 through July 17, 1985.

II.
On September 11, 1985 Nationwide filed this action against the Fund alleging violations of ERISA and of state common law.
Count I of the complaint asserts that the Fund violated ERISA by failing to provide medical and disability benefits to Zaccardi. Nationwide contends that because it paid these benefits, it is subrogated to the rights of Zaccardi. It also obtained a subrogation assignment from him.[1]
Under ERISA's civil enforcement provision, Nationwide lacks standing to sue:
(a) Persons empowered to bring a civil action.
A civil action may be brought 
(1) by a participant or beneficiary 
* * * * * *
(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan
* * * * * *
(3) by a participant, beneficiary or fiduciary (A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan.
29 U.S.C.A. § 1132. See Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 107 S.Ct. 1542, 1546, 95 L.Ed.2d 55 (1987) (§ 1132 provides "an exclusive federal cause of action").
Section 1132(a)(1)(B) does not extend to assignees of ERISA benefits. See Northeast Dep't ILGWU Health and Welfare Fund v. Teamsters Local Union No. 229 Welfare Fund, 764 F.2d 147 (3d Cir.1985). "Congress simply made no provision in § 1132(a)(1)(B) for persons other than participants and beneficiaries to sue, including persons purporting to sue on their behalf." Id. at 154 n. 6. But see Misic v. Building Serv. Employees Health and Welfare Trust, 789 F.2d 1374, 1378 n. 4 (9th Cir. 1986); Wisconsin Dep't of Health and Social Serv. v. Upholsterers Int'l Union Health and Welfare Fund, 686 F.Supp. 708 (W.D.Wis.1988).
Whether Nationwide itself was prejudiced by the Fund's actions is irrelevant. Zaccardi's assignment gives Nationwide "any potential claim [it] might have had under the [Fund], nothing more and nothing less." Wisconsin Dep't of Health and Social Serv., 686 F.Supp. at 712.
But even assuming that Nationwide had standing to sue, the Fund's denial of benefits was not a violation of ERISA as to its participant, Zaccardi. Courts are empowered by ERISA to protect plan participants from benefit deprivations such as result from vague language or uncertain rules. See, e.g., Argo v. Joint Plumbing Indust. Bd., 623 F.2d 207 (1980); Hills v. Waukesha Title Co., Inc., 576 F.Supp. 1103 (E.D.Wis.1983). However, as to an amendment to a plan by a plan administrator or trustee, the scope of review is limited to whether the amendment is arbitrary and capricious.[2]Haeffele v. Hercules, Inc., 839 *185 F.2d 952, 957 (3d Cir.1988); Baker v. Lukens Steel Co., 793 F.2d 509, 513 (3d Cir. 1986). Factors to be considered include:
1) the extent to which the participant was an intended beneficiary of the plan;
2) the extent to which the amendment is applied retroactively to strip the participant of previously earned credits;
3) the extent to which he was notified of the amendment;
4) the extent to which it is shown that actuarial concerns require denial of benefits to him.
Haeffele, 839 F.2d at 958 (citing Baker, 793 F.2d at 513).
Here, while the amendment, arguably, was arbitrary and capricious as to Nationwide, it was not so as to Zaccardi. Zaccardi was an intended beneficiary of the plan who was notified well within the time required by ERISA. See 29 U.S.C.A. § 1024(b)(1)(B) (West Supp.1988) (notice must be provided within 210 days after the close of the plan year in which the change was adopted). Inasmuch as the plan provides benefits on an expense-incurred basis, Zaccardi was not deprived of coverage. The amendment was for the salutary purpose of protecting the Fund's solvency.
In count II of the complaint, Nationwide raises a state common law cause of action for unjust enrichment. The Fund responds that this cause of action is preempted by ERISA.
ERISA "comprehensively regulates employee pension and welfare plans." Metropolitan Life Ins. Co. v. Massachusetts, 471 U.S. 724, 732, 105 S.Ct. 2380, 2385, 85 L.Ed. 2d 728 (1985). Section 514 of ERISA contains a broad pre-emption clause which provides that ERISA "shall supersede any and all state laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). "[T]he phrase `relate to' has been given the broadest common sense meaning, such that a state law `relates to' a benefit plan if it has a connection with or reference to such a plan." Shiffler v. Equitable Life Assurance Soc'y, 838 F.2d 78 (3d Cir.1988). See Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987). "[T]he pre-emption clause is not limited to state laws specifically designed to affect employee benefit plans." Shiffler, 838 F.2d at 81. The Shiffler court observed that "[i]n Pilot Life the Court held that the common law causes of action of `tortious breach of contract' and `the Mississippi law of bad faith' were related to the employee benefit plan which was the focus of the litigation and accordingly the claims fell under the ERISA pre-emption clause." Id.
Nationwide's theory of unjust enrichment is, simply, that the Fund, rather than Nationwide, should be responsible for the obligations to Zaccardi. In the words of section 1144(a), these allegations "relate to" employee benefits. No matter how the issue is characterized, Nationwide's goal is to recover payments regulated by ERISA. This state law claim is, therefore, pre-empted.
An order follows.

ORDER
AND NOW, this 12 day of September, 1988, judgment is entered in favor of defendant Teamsters Health and Welfare Fund of Philadelphia and Vicinity and against plaintiff Nationwide Mutual Insurance Company.
NOTES
[1] It states:

I, Dominic Zaccardi, give to Nationwide Insurance Company the right of subrogation against the Teamsters Health & Welfare Fund if Nationwide Insurance Company should decide to pursue its claim for personal protection benefits resulting from the accident of December 3, 1982.
[2] Until recently, most courts applied the arbitrary and capricious review standard to all ERISA trustees' decisions. See, e.g., Gaines v. Amalgamated Ins. Fund, 753 F.2d 288 (3d Cir. 1985). However, courts have begun to question the application of this deferential standard "in cases where the trustees seem not to be true neutrals in the disputes they are called on to resolve." Shull v. State Mach. Co. Inc. Employees Profit Sharing Plan, 836 F.2d 306, 307 (7th Cir.1987). See Bruch v. Firestone Tire and Rubber Co., 828 F.2d 134 (3d Cir.1987), cert. granted, ___ U.S. ___, 108 S.Ct. 1288, 99 L.Ed.2d 498 (1988). Instead, in instances where trustee impartiality is alleged, our Circuit held that no deference is to be given to the trustees' decision and the claim should be treated as an ordinary contract dispute. Id. at 145.

Nevertheless, in Bruch and again this year it was suggested that the arbitrary and capricious standard of review remains applicable to the decision of a trustee to amend a plan. Id. at 144 n. 11; Haeffele v. Hercules, Inc., 839 F.2d 952, 957 (3d Cir.1988).