**COMMONWEALTH OF PENNSYLVANIA DEPARTMENT OF PUBLIC WELFARE, Plaintiff,**

v.

**QUAKER MEDICAL CARE AND SURVIVORS PLAN, Defendant.**

**Civ. A. No. 92–1752.**

United States District Court, W.D. Pennsylvania.

Oct. 28, 1993.

Jason W. Manne, Asst. Counsel, Office of Gen. Counsel, Dept. of Public Welfare, Pittsburgh, PA, for plaintiff.

H. Yale Gutnick, Ronald D. Barber, Strassburger, McKenna, Gutnick & Potter, Pittsburgh, PA, Jeffrey K. Ross, John T. Murray, Marcia A. Mahoney, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, IL, for defendant.

### OPINION AND ORDER

D. BROOKS SMITH, District Judge.

#### I. Introduction

The Pennsylvania Department of Public Welfare (DPW) brought this action to recover health benefits in the amount of $55,-869.00, plus interest and costs, from defendant Quaker Medical Care and Survivors Plan (Quaker), an "employee welfare benefit plan" under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001, 1002(1) (ERISA), for services provided to Michael Kessler (Kessler) at the Allentown State Hospital in Allentown, Pennsylvania. The action is currently before the Court on defendant's Motion To Dismiss (Docket No. 4).

#### II. Background

On or about January 27, 1986, Michael Kessler (Kessler) was admitted to the children's unit at Allentown State Hospital (Hos-

pital), a facility owned and operated by plaintiff DPW. Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss (Plaintiff's Opposition Memo) at 4. Kessler allegedly received medical care from the Hospital from his date of admission until on or about December 23, 1987, during which time he had four (4) sources of health benefits to pay for his care: his mother's health maintenance organization (HMO), his father's Blue Cross plan, his stepfather's Quaker Medical Care and Survivors Plan (the Plan) and Medicaid. The HMO and Blue Cross allegedly paid the medical costs for which they were billed. Quaker, however, refused to pay for any of the services rendered to Kessler, resulting in plaintiff's payment of $55,869.00.

DPW attempted unsuccessfully to obtain payment from Quaker for medical services rendered to Kessler at its Allentown facility. By letter dated April 24, 1992, Quaker informed DPW that it could file an appeal of claim denial within sixty (60) days. DPW apparently responded with its own letter dated May 14, 1992, offering to reach a compromise settlement with Quaker. On May 21, 1992, DPW obtained an assignment of payment of health benefits from James Hickey (Hickey), Kessler's stepfather and the Plan "participant" as that word is defined by 29 U.S.C. § 1002(7), pursuant to 42 U.S.C. § 1396k, which assignment was specifically authorized by the Plan.[1]

By letter dated June 3, 1992, Quaker rejected DPW's settlement offer and further noted that appeals of claim denials must originate "from an employee or an employee's designated agent. It appears that you do not represent a participant nor a benefi-

ciary under the Plan. Therefore, we cannot find any basis for considering your letter as an appropriate appeal." Exhibit C to Complaint. In its letter, Quaker further indicated that had an appropriate appeal been made, it would continue to deny payment of benefits because, *inter alia:* (1) "Quaker's Plan [was] neither the primary nor the secondary coverage entity"; (2) The claim was submitted "beyond reasonable time limits for considering a claim"; (3) "We found no record of an appeal being filed with the Administrator by a participant or beneficiary" within the required sixty day time limit. *Id.* DPW filed its complaint on August 11, 1992.

### III. *Discussion*

■ In support of its motion to dismiss, Quaker argues that DPW lacks standing to sue for an alleged ERISA violation because it is neither an ERISA plan participant[2] or beneficiary,[3] nor able to gain beneficiary status by virtue of Hickey's (the plan participant) assignment of payment of benefits to it. Section 502 of ERISA, 29 U.S.C. § 1132(a), provides:

> A civil action may be brought—
>
> (1) by a participant or beneficiary—
>
> (A) for the relief provided for in subsection (c) of this section, or
>
> (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under terms of the plan....

This section, which is to be read "narrowly and literally," *Allstate Ins. Co. v. The 65 Security Plan,* 879 F.2d 90, 94 (3d Cir.1989) (citation omitted), does not explicitly include

---

**1.** The Quaker Plan provides in relevant part: At your option, you can *assign* benefits to doctors, hospitals, or other providers of services, if they have a policy of accepting assignments. This means the Plan will send the benefit payment check directly to the provider of services that has billed you, and you will get an explanation of this payment for your records. If you want your claim handled this way, you must sign the authorization on the claim form. Attachment to Plaintiff's Opposition Memo.

**2.** 29 U.S.C. § 1002(7) provides: The term "participant" means any employee or former employee of an employer, or any mem-

ber or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees or such employer or members of such organization, or whose beneficiaries may be eligible to receive any such benefit.

**3.** 29 U.S.C. § 1002(9) defines "person" as "an individual, partnership, joint venture, corporation, mutual company, joint-stock company, trust estate, unincorporated organization, association, or employee organization."

"assignees" among the enumerated list of parties who may bring a civil action under ERISA. Defendant contends that this list of parties expressly empowered by § 1132(a) to sue under ERISA should be construed exclusively, and that plaintiff is therefore without standing to bring this action.

Defendant's position is consonant with a line of Third Circuit district court cases holding that "[s]tanding under ERISA does not extend to assignees of participant beneficiaries because Congress simply made no provision in § 1132(a) for unenumerated persons to sue." *Allergy Diagnostics Laboratory v. Equitable,* 785 F.Supp. 523, 527 (W.D.Pa. 1991). *See also Health Scan, Ltd. v. Travelers Insurance Co.,* 725 F.Supp. 268, 269–70 (E.D.Pa.1989); *Nationwide Mutual Ins. Co. v. Teamsters Health & Welfare Fund,* 695 F.Supp. 181, 184 (E.D.Pa.1988). These cases, in turn, rely on the Third Circuit Court of Appeals' opinion in *Northeast Department ILGWU v. Teamsters Local Union No. 229,* 764 F.2d 147, 153 (3d Cir.1985), wherein the court rejected the argument of a non-participant, non-beneficiary pension fund and its trustee that it should have essentially derivative standing to sue under 29 U.S.C. § 1132(a)(1) because it "[stood] in the shoes" of, or had identical interests with, a plan beneficiary. *Id.* at 152. The court further explained in dicta that federal jurisdiction would not obtain under the theory that the pension fund was the "assignee or subrogee" of the plan beneficiary:

> First, Congress simply made no provision in § 1132(a)(1)(B) for persons other than participants and beneficiaries to sue, including persons purporting to sue on their behalf. Second, the intentions of the parties and the district court regarding federal jurisdiction are irrelevant to the determination whether such jurisdiction exists. Third, [the plan beneficiary] did not, in fact, make an assignment of her claim to the IGLWU Fund, and it is far from clear that, in litigating this case, the ILGWU Fund pursued only [the plan beneficiary's] interests. Moreover, even if [the plan beneficiary] had actually assigned her claim to the ILGWU Fund, we have serious doubts whether she could assign along with her substantive rights her right to sue in fed-

eral court. *Cf. McSparran v. Weist,* 402 F.2d 867 (3d Cir.1968) (minor cannot manufacture diversity jurisdiction by appointing out-of-state guardian to prosecute suit).

*Id.* at 154 n. 6.

This guidance has not been uniformly followed by courts in the Third Circuit, however, and several have concluded that, at least where a valid assignment has actually been executed (unlike the factual scenario in *Northeast Dept.,* where the pension fund only argued that it was positioned *as if* it had been assigned rights to benefits), the assignee medical service provider may bring an action under section 1132(a). *See Northwestern Institute of Psychiatry, Inc. v. Travelers Ins. Co.,* 1992 WL 236257 at *5 (E.D.Pa. Sept. 3, 1992) (Yohn, J.); *Winter Garden Medical Ctr. v. Montrose Foods Products of Pa., Inc.,* 1991 WL 124577 (E.D.Pa. July 3, 1991) (Bechtle, J.); *Albert Einstein Medical Ctr. v. Nat. Ben. Fund,* 740 F.Supp. 343, 350 (E.D.Pa.1989); *Hahnemann Medical College and Hosp. v. Stone,* 1987 WL 17568 (E.D.Pa. Sept. 24, 1987) (Ditter, J.). These cases appear to be in agreement with the weight of authority. *See e.g., Cromwell v. Equicor–Equitable HCA Corp.,* 944 F.2d 1272, 1277–78 (6th Cir.1991); *Kennedy v. Connecticut General Life Ins. Co.,* 924 F.2d 698, 700 (7th Cir.1991); *Hermann Hosp. v. MEBA Medical & Benefits Plan,* 845 F.2d 1286, 1289–90 (5th Cir.1988); *Misic v. Building Service Employees Health,* 789 F.2d 1374, 1377 (9th Cir.1986). *See generally* David P. Kallus, *ERISA: Do Health Care Providers Have Standing To Bring a Civil Enforcement Action Under Section 1132(a)?,* 30 Santa Clara L.Rev. 173, 183 n. 39 (1990) (listing cases conferring standing to sue in federal court upon assignees of ERISA plan beneficiaries).

The Court concedes the attractiveness of plaintiff's position. *Northeast Dept.* is factually distinguishable from the case at bar, which involves an actual assignment, and the dicta from that case is not binding. Further, as the Ninth Circuit noted in *Misic,* ERISA's elaborate proscription against assignment of pension benefits, 29 U.S.C. § 1056(d)(1), is inapplicable to welfare benefit plans. *Misic,* 789 F.2d at 1376.

However, DPW's argument drawn from its position as beneficiary is ultimately unavailing for DPW falls outside the statutory definition of "beneficiary" as "a person designated by a participant ... who is or may become entitled to a benefit thereunder." 29 U.S.C. § 1002(8). 29 U.S.C. § 1132(a)(1)(B) permits participants and their beneficiaries to bring civil enforcement actions. If a participant designates an entity as the party to receive his benefits under the ERISA plan, that entity is a "beneficiary," so long as it satisfies the statutory definition of "person." *See Kennedy v. Connecticut General Life Ins. Co.,* 924 F.2d at 700. A close reading of 29 U.S.C. § 1002(9) (statutory definition of "person") disqualifies DPW from taking beneficiary status, for Congress did not include governmental agencies within its specifically defined list of persons, and only "persons" can be beneficiaries. Congress carefully included within its list of "persons" almost every legal entity that might conceivably take beneficiary status, and conspicuously excluded state governments and their agencies. Accordingly, it would not be appropriate for this Court to practically amend §§ 1002(8) and (9) by granting the DPW "person" and therefore "beneficiary" status. *See Will v. Michigan Dept. of State Police,* 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989) ("[I]n common usage, the term 'person' does not include the sovereign, [and] statutes employing the [word] are ordinarily construed to exclude it' "). The cases cited by plaintiff holding that state welfare agencies have standing to sue under ERISA by virtue of their assignee status have not considered the effect of § 1002(9). *See e.g., Commonwealth of Pennsylvania Dep't of Public Welfare v. Lubrizol Retiree Health Care Plan,* No. 92–1803, slip op. at 5–6 (W.D.Pa.1993); *Wisconsin Dep't of Health & Social Services v. Upholsterers Int'l Union Health & Welfare Fund,* 686 F.Supp. 708 (W.D.Wis.1988).

42 U.S.C. § 1396k provides that State medical assistance plans "shall provide, that as a condition of eligibility for medical assistance under the State plan", individuals must assign to the State any rights to "payment for medical care from any third party." 29 U.S.C. § 1144(d) provides that, "Nothing in this subchapter shall be construed to alter, amend, modify, invalidate, impair, or supersede any law of the United States...." Plaintiff argues that ERISA should not be interpreted so as to withhold standing from assignees when the Medicaid statute *requires* State welfare agencies to obtain an assignment of benefits.

I am not persuaded by this argument. The Medicaid statute cannot by its mandatory assignment provision confer standing upon assignees, and therefore federal jurisdiction for an ERISA civil enforcement action. Furthermore, not conferring standing to sue under ERISA upon assignees is not the same as impairing the Medicaid statute's mandatory assignment provision, though it obviously makes ERISA's civil enforcement scheme more cumbersome. *See Health Scan, Ltd. v. Travelers Ins. Co.,* 725 F.Supp. 268, 270 n. 2 (E.D.Pa.1989).

Plaintiff's final argument is that the Court should fashion a cause of action from federal common law, in which case jurisdiction would be proper under 28 U.S.C. § 1331. As plaintiff notes, the *Northeast Dept.* court did precisely this after holding that 29 U.S.C. § 1132, ERISA's civil enforcement provision, does not authorize federal jurisdiction over actions brought by one pension fund as assignee against another pension fund. The court reasoned that ERISA's failure to expressly grant jurisdiction was irrelevant so long as the plaintiff's claim arose under federal common law. Central to the court's decision was the fact that a law relating to things federal is a law "of the United States" for purposes of 28 U.S.C. § 1331 (federal question jurisdiction), even if it is judge-made common law. *Northeast Dept. ILGWU,* 764 F.2d at 155. The *Northeast Dept.* court determined that an assignee's claim for ERISA benefits is one that arises under federal law because it is governed by the federal common law of employee benefit plans. *Id.* at 157 (citing *Franchise Tax Board of the State of California v. Construction Laborers Vacation Trust for Southern California,* 463 U.S. 1, 26, 103 S.Ct. 2841, 2855, 77 L.Ed.2d 420 (1983) ("the meaning and enforceability of provisions in [a] trust agreement ... come[ ] within the class of

questions for which Congress intended that federal courts create federal common law"). Therefore, federal jurisdiction was proper under § 1331. *Cf. Illinois v. City of Milwaukee, Wisconsin,* 406 U.S. 91, 92 S.Ct. 1385, 31 L.Ed.2d 712 (1972) ("§ 1331 jurisdiction will support claims founded upon federal common law as well as those of a statutory origin").

■ Defendant contends that the *Northeast Dept.* holding "must be seriously questioned in light of" *Massachusetts Mutual Ins. Co. v. Russell,* 473 U.S. 134, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985). In *Massachusetts Mutual,* the Supreme Court of the United States declined to find an implied right of action under ERISA for a beneficiary seeking extracontractual damages. The Court stated:

> The six carefully integrated civil enforcement provisions found in § 502(a) [29 U.S.C. § 1132(a)] of [ERISA] as finally enacted . . . provide strong evidence that Congress did not intend to authorize other remedies that it simply forgot to incorporate expressly. The assumption of inadvertent omission is rendered especially suspect upon close consideration of ERISA's interlocking, interrelated, and interdependent remedial scheme, which is in turn part of a "comprehensive and reticulated statute."

*Id.* at 146, 105 S.Ct. at 3092 (citation omitted). Thus, courts have very little freedom to create federal common law causes of action beyond those specifically enumerated in ERISA.

Notwithstanding the Supreme Court's admonition in *Massachusetts Mutual,* plaintiff's argument based on federal common law is meritorious. As the United States Court of Appeals for the Third Circuit has explained, the appropriate inquiry when faced with a request to create a federal common law right of action "is whether the judicial creation of a right in this instance is 'necessary to fill in interstitially or otherwise effectuate the statutory pattern enacted in the large by Congress.' " *Plucinski v. I.A.M. Nat'l Pension Fund,* 875 F.2d 1052, 1056 (3d Cir.1989) (citation omitted). Granting assignee standing to bring a federal common law action analogous

to a § 1132(a)(1)(B) action does effectuate the statutory pattern of ERISA, for it protects employees' contractually defined benefits through the assignee, who merely "stands in the shoes" of the plan participant. *Psychiatric Institute of Washington, D.C. v. Connecticut General Life Ins. Co.,* 780 F.Supp. 24, 30 (D.D.C.1992) (citing *Misic,* 789 F.2d at 1378). The Third Circuit's holding in *Northeast Dept.* that an assignee's attempt to enforce ERISA's substantive rules states a claim under federal common law remains unaffected by *Massachusetts Mutual,* and is dispositive of the case at bar. An appropriate order follows.

## ORDER

AND NOW, this 28th day of October, 1993, consistent with the foregoing opinion, defendant Quaker Medical Care and Survivor Plan's Motion to Dismiss (Docket No. 4) is hereby denied.